**In re BAYSIDE PRISON LITIGATION.**

**Civil Action No. 97–5127.**

United States District Court,
D. New Jersey.

March 13, 2002.

Justin T. Loughry, Lawrence W. Lindsay, Loughry & Lindsay, LLC, Camden, NJ, Audrey J. Bomse, Piscataway, NJ, Paul J. Hirsh, Paul Hirsh, P.C., Parsippany, NJ, for Plaintiffs.

Andrew J. Kyreakakis, Ambrosio, Kyreakakis & Dilorenzo, LLP, Bloomfield, NJ, for Plaintiff, Junius Williams.

Mark M. Roselli, Kusnirik & Fornaro, Hamilton, NJ, for Defendants.

## OPINION

ORLOFSKY, District Judge.

This § 1983 prison litigation is, incredibly, still in its initial phases almost four-and-a-half years after the first complaint was filed on October 17, 1997. This prolonged first act is the result of the hundreds of constantly evolving Plaintiffs, the impossibility of maintaining the case as a class action, and the shifting contours of the law applicable to Plaintiffs' claims. This latest, and presumably last Motion to Dismiss, presents this Court with two novel questions.

First, I must address whether Plaintiffs are required to meet a pleading standard more demanding than the one set forth in Federal Rule of Civil Procedure 8(a),[1] for claims against individual government officials under 42 U.S.C. § 1983. Second, I must decide whether the "grievance procedure" described in the Bayside Prison Inmate Handbook could or did constitute an "available administrative remedy" for purposes of the exhaustion requirement contained in the Prison Litigation Reform Act, 42 U.S.C. § 1997e (2000)("PLRA").

---

1. Rule 8(a) provides:

A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.
Fed.R.Civ.P. 8(a).

For the reasons that follow, I conclude that the Supreme Court's recent reiteration of the purpose of the simplified pleading system embodied in the Federal Rules of Civil Procedure mandates the conclusion that Plaintiffs can not be held to a "heightened pleading standard" for their § 1983 claims. I further conclude that while the administrative remedies described in internal prison documents that are not promulgated pursuant to a state administrative procedure act may constitute an "administrative remedy" under the PLRA, the procedures codified in the Bayside Prison Inmate Handbook were not sufficiently clear, expeditious, or respected by prison officials to constitute such an administrative remedy.

## I. BACKGROUND

The plaintiffs in this case are hundreds of inmates incarcerated at the Bayside State Correctional Facility ("Bayside") in Leesburg, New Jersey, between July 30, 1997 and November 1, 1997. Plaintiffs allege that following the fatal stabbing of Corrections Officer Fred Baker by Inmate Steven Beverly on July 30, 1997, a "lock down" was ordered at Bayside, during which they suffered a panoply of injuries at the hands of Defendants, in violation of their constitutional rights. *See* Sixth Amended Compl. at ¶ 4. Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Complaint[2] marks the end of this lengthy prelude to substantive discovery,[3] thus, a brief summary of the case's procedural history is in order.

Plaintiffs' initial complaint was filed on October 17, 1997. An Amended Complaint followed quickly thereafter on October 31, 1997. Pursuant to a Court Order, Plaintiffs' counsel conducted a series of interviews with Bayside inmates, in order to determine the composition of the Plaintiff class. *See* Order of Nov. 16, 1997. Defendants moved to dismiss Plaintiffs' Amended Complaint and Plaintiffs cross-moved to file a Second Amended Complaint on February 6, 1998. In an Opinion dated September 29, 1998, I granted in part and denied in part both motions. *See White v. Fauver,* 19 F.Supp.2d 305 (D.N.J.1998), *abrogated in part by Nyhuis v. Reno,* 204 F.3d 65 (3d Cir.2000) and *Booth v. Churner,* 206 F.3d 289 (3d Cir.2000). Specifically, this Court held: (1) the PLRA did not encompass complaints of excessive force; (2) the PLRA did not encompass claims of false disciplinary charges or retaliation for filing suit; (3) the PLRA's requirement that inmates exhaust administrative remedies before filing suit did not apply to claims for compensatory and punitive damages where monetary relief was not available under a state's inmate grievance procedure; (4) allegations of mere threats do not state a claim under 42 U.S.C. § 1983; and (5) prison officials were entitled to qualified immunity with respect to allegations of unconstitutional prison conditions. I granted Plaintiffs' Motion for leave to file a Second Amended Complaint, except with regard to the retaliation claim in Count V, which was denied without prejudice for Plaintiffs' failure to

2. In a letter dated January 11, 2002, counsel for Defendants, Mark M. Roselli, Esq., requested that this Court treat their Motion to Dismiss the Fifth Amended Complaint, which was filed on October 16, 2001, as the answer to Plaintiffs' Sixth and Final Amended Complaint which was filed on December 21, 2001. *See* Letter from Roselli to Magistrate Judge Rosen of Jan. 11, 2002; *see also* discussion *infra* pp. 8–9.

3. *See* Order, *In re: Bayside Prison Litigation,* Civ. A. No. 97–5127 (D.N.J. Dec.11, 2001)(Rosen, J.)("The plaintiffs are forewarned, however, that no further amendments will be permitted. Expansion of this case, now over four years old, must come to an end if the litigants are ever to have resolution to this litigation. The court shall consider no further applications to amend the complaint; ...").

exhaust administrative remedies. *See* *White,* 19 F.Supp.2d at 322.

Plaintiffs filed a Second Amended Complaint in response to *White* on December 22, 1998, and, due to inadvertent omissions, filed a Third Amended Complaint two days later, on December 24, 1998. Magistrate Judge Rosen consolidated the separately filed cases for case management purposes only on December 31, 1998, and amended the caption to read: "In re: Bayside Prison Litigation." *See* Order of Dec. 31, 1998.

Plaintiffs moved to certify a class action on September 3, 1999, seeking to name Plaintiffs Laverna White, Carlos Martinez and Michael Shontz as class representatives. I denied that motion in an Order dated April 25, 2000, finding that the Complaint alleged that Plaintiffs suffered widely varying types of injury at different times and at the hands of many different defendants, thus, "individual issues overwhelm[ed] those that might be viewed as common." *See* Order of Apr. 25, 2000, at 6–8; Memorandum Op., *In re Bayside Prison Litigation,* 2002 WL 386706, —— F.Supp.2d —— (D.N.J.2000).

Defendants filed a Motion to Partially Dismiss Plaintiffs' Third Amended Complaint on March 22, 1999. While that motion was pending, Plaintiffs moved for leave to file a Fourth Amended Complaint on July 29, 1999 in order to add approximately 656 new plaintiffs and 228 new defendants. That motion was granted on September 10, 1999. *See* Order of Sept. 10, 1999 (Rosen, J.). On December 2, 1999, this Court ruled on Defendants' Motion to Partially Dismiss the Third Amended Complaint, which, due to the interim filing of the substantially similar Fourth Amended Complaint, was treated as a Motion to Dismiss the Fourth Amended Complaint. *See* Order of Dec. 2, 1999, at 4

(Orlofsky, J.). Specifically, I:(1) denied Defendants' Motions to Dismiss Plaintiffs' allegations of derogatory name calling and inadequate medical care; and, (2) granted Defendants' Motion to Dismiss the due process claims of Plaintiffs which alleged that they were coerced into pleading guilty to disciplinary charges because a writ of habeas corpus is the sole remedy for such claims. *Id.* at 7.

After filing a Motion to Partially Dismiss Plaintiffs' Fourth Amended Complaint on January 31, 2000, Defendants filed a Motion to Dismiss Plaintiffs' Fourth Amended Complaint in its entirety on July 12, 2000. Defendants argued that recent opinions of the United States Court of Appeals for the Third Circuit, *i.e., Nyhuis v. Reno,* 204 F.3d 65 (3d Cir.2000) and *Booth v. Churner,* 206 F.3d 289 (3d Cir. 2000), dictated the dismissal of Plaintiffs' Fourth Amended Complaint for failure to exhaust administrative remedies. In a Bench Opinion, dated November 29, 2000, I recognized that both *Nyhuis* and *Booth* impacted the *In re Bayside Prison Litigation,* because they established, respectively, that there is no "futility exception" to the PLRA's administrative exhaustion requirement, and that the PLRA's exhaustion requirement applied to claims of excessive force. *See* Bench Op. of Nov. 29, 2000. I denied both motions on November 29, 2000, however, because of the changing state of the law governing the issues in the case, and granted Plaintiffs leave to file a Fifth Amended Complaint that: (1) alleged that each Plaintiff had exhausted his administrative remedies; (2) removed references to the First, Fifth and Ninth Amendments to the United States Constitution; and (3) removed references to malicious destruction of personal property. *See* Order of Nov. 29, 2000.

Plaintiffs filed a Fifth Amended Complaint on March 29, 2001.[4] Defendants

---

4. On January 26, 2001, Andrew J. Kyreakakis, Esq., was substituted as counsel for Plaintiff,

Junius Williams. Williams filed his own Fifth

moved to dismiss Plaintiffs' Fifth Amended Complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) on October 16, 2001. While that motion was pending, Plaintiffs were given leave to file a Sixth Amended Complaint, solely to "supply further detail to the claims already asserted by 42 specific individuals, all named plaintiffs in the previous complaint." *See* Order of Dec. 11, 2001 (Rosen, J.). Judge Rosen's Order also provided that no further amendments to the Complaint will be allowed. *Id.* When it was discovered that the Sixth Amended Complaint added eight new plaintiffs in contravention of Magistrate Judge Rosen's Order, the Court ordered that those plaintiffs be stricken from the Sixth Amended Complaint. *See* Order of Jan. 3, 2002 (Rosen, J.)(striking Sixth Amended Complaint ¶¶ 187a (Glen Michael Jackson); 232a (William David Mellow); 249a (Joseph Novak); 267a (Edwin Martin Ranero); 280a (Gerard Roberts); 282c (Ramon Rodriguez); 344a (Charles L. White); 354a (Channy Young)).

I shall now consider Defendants' Motion to Dismiss the Fifth Amended Complaint. Because the Sixth Amended Complaint is substantially identical to the Fifth Amended Complaint, and because Defendants have requested that this Court treat their pending Motion to Dismiss the Fifth Amended Complaint as their Answer to the Sixth Amended Complaint, *see* Letter from Roselli to Magistrate Judge Rosen of Jan. 11, 2002, I shall treat the pending motion as one to dismiss the Sixth (and final) Amended Complaint.

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. For the reasons set forth below, I will deny in part and grant in part Defendants' Motion to Dismiss. Specifically, I will: (1) grant De-

fendants' Motion to Dismiss the § 1985(3) conspiracy claims, contained in Count IV of Plaintiffs' Sixth Amended Complaint and in Count III of Williams's Fifth Amended Complaint, of all Plaintiffs, except those identified in Part III.A.4. *infra;* and, (2) deny Defendants' Motion to Dismiss in all other respects.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. "In considering a Rule 12(b)(6) motion, the Court may dismiss a complaint if it appears certain the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *Mruz v. Caring, Inc.,* 39 F.Supp.2d 495, 500 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citing *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir. 1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, Rule 12(b)(6) authorizes a court to dismiss a claim on a dispositive issue of law.

Amended Complaint on March 28, 2001. Defendants' current Motion to Dismiss applies equally to Williams' Complaint. *See* Defs.' Br. at 6, n. 6. Unless otherwise noted in the body of this Opinion, it should be assumed that my discussion of the issues applies equally to Williams and to the larger group of Plaintiffs.

*Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### B. What Matters Not Contained in the Pleadings May Be Considered on a Motion to Dismiss Without Conversion to a Motion for Summary Judgment

■ Ordinarily, if, on a Motion to Dismiss, a party presents matters outside the pleadings, the District Court must convert the Motion to Dismiss into a Motion for Summary Judgment, and give all parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. *See* Fed.R.Civ.P. 12(b); *Rose v. Bartle,* 871 F.2d 331, 340 (3d Cir.1989). However, in this Circuit, a District Court may also consider: (1) matters attached to the complaint, *see* Fed.R.Civ.P. 10(c); *Arizmendi v. Lawson,* 914 F.Supp. 1157, 1160–61 (E.D.Pa.1996); (2) matters incorporated into the pleadings by reference, *see In re Westinghouse Sec. Litig.,* 832 F.Supp. 948, 964 (W.D.Pa.1993), *rev'd on other grounds,* 90 F.3d 696 (3d Cir.1996); (3) matters of public record, *see Pension Benefit Guaranty Corp. v. White,* 998 F.2d 1192, 1196–97 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Caldwell Trucking PRP Grp. v. Spaulding Composites Co.,* 890 F.Supp. 1247, 1252 (D.N.J.1995); and (4) matters integral to or upon which plaintiff's claim is based. *See In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 368 n. 9 (3d Cir.1993); *Caldwell Trucking,* 890 F.Supp. at 1252.

■ "The primary purpose of Rule 12(b)'s conversion provision is to protect plaintiffs against, in. effect, summary judgment by ambush." *See Bostic v. AT & T of the Virgin Islands,* 166 F.Supp.2d 350, 354–55 (D.V.I.2001)(Orlofsky, J.)(citing *Pension Benefit,* 998 F.2d at 1196). Incorporation of a document which is referenced in a plaintiff's complaint is especially appropriate where neither party can claim prejudice or surprise by the court's reliance on the document and where plaintiff's claim relies solely or substantially on the document's contents. *See Cue Fashions, Inc. v. LJS Distrib., Inc.,* 807 F.Supp. 334, 336 (S.D.N.Y.1992).

Because both Defendants and Plaintiffs have submitted numerous documents outside the pleadings in support of and in opposition to the Motion to Dismiss, I must, as an initial matter, decide which, if any, I may consider without converting Defendants' Motion to Dismiss into a Motion for Summary Judgment. Because most of the matters outside the pleadings that have been submitted arguably fall under the exception for matters integral to or referenced in Plaintiffs' complaint, I will first describe the contours of Plaintiffs' Sixth Amended Complaint and Williams's Fifth Amended Complaint.

In response to this Court's November 19, 2002 Order, Plaintiffs included paragraphs pertaining to Exhaustion of Remedies in their Sixth Amended Complaint. *See* Sixth Amended Compl. at ¶¶ 5–12. In those paragraphs, Plaintiffs allege that the New Jersey Department of Corrections ("NJ DOC") has "failed to promulgate a statewide, uniform administrative grievance procedure that would allow plaintiffs to pursue an administrative remedy," thus there can be no requirement that the Plaintiffs exhaust administrative remedies under the PLRA. *Id.* at ¶ 5. Plaintiffs allege that the Administrative Remedy Form ("ARF"), discussed in the Bayside State Prison handbook, "did not constitute an available 'administrative remedy' within the meaning of the PLRA, because it was not an administrative scheme promulgated and adopted by the state Department of Corrections." *Id.* at ¶ 6. Alternatively, Plaintiffs allege that, even if the ARF was an administrative remedy, it was not

"available" to Plaintiffs here because Defendants "frightened, intimidated and deterred [Plaintiffs] from obtaining and filing [ARF's]," and because the Inmate Handbook instructed that ARF's were not a substitute for litigation and were inapplicable to claims affecting more than one inmate. *Id.* at ¶¶ 7–8. Paragraph 9 alleges that New Jersey statutes and regulations led Plaintiffs to believe that complaints to the Ombudsman were proper means to register complaints. *Id.* at ¶ 9. Paragraphs 10 through 11a, included in response to this Court's Order that Plaintiffs allege that they have exhausted their administrative remedies, list those Plaintiffs whose complaints were investigated by Internal Affairs or who filed ARFs. *Id.* at ¶¶ 10–11a. Williams's Fifth Amended Complaint summarily alleges that he has exhausted his administrative remedies, *see* Williams Fifth Amended Compl. at ¶ 18, and that he suffered permanent injuries as a result of the alleged conduct of Defendants. *Id.* at ¶¶ 13, 15, 16, 20.

In support of their Motion, Defendants have submitted: (1) this Court's November 29, 2000 Order; (2) a letter, dated January 18, 2001, from Plaintiffs' counsel to this Court requesting an additional sixty days to file the Fifth Amended Complaint; (3) a letter, dated March 27, 2001, from Plaintiffs' counsel to Judy Gentilini, former Administrative Assistant at Bayside regarding the filing of ARFs by some of the Plaintiffs; (4) a letter, dated March 28, 2001, from Plaintiffs' counsel to Ms. Gentilini regarding the ARF filed by Plaintiff, Michael Jordan; (5) a letter, dated March 15, 2001, from counsel for Plaintiff, Junius Williams, regarding Williams's ARF; and, (6) a list of 380 Plaintiffs identified in the caption of the Fifth Amended Complaint who do not make specific allegations in the body of the Complaint. *See* Certification of Mark M. Roselli, Esq. in Support of Defs.' Mot. to Dismiss Pls.' Fifth Amended Compl.

I conclude that I may consider Item (1) because it is a public record, and that I may consider Items (3), (4), (5), and (6) because they are matters integral to Plaintiffs' Sixth Amended Complaint. Item (2) does not fall under any applicable exception, and therefore I will not consider it in ruling on this Motion to Dismiss.

Plaintiffs' extra-pleading submissions are far more substantial. They include: (1) excerpts from the Bayside Prison Inmate Handbook; (2) excerpts from the deposition of Margaret Lebak, Assistant Ombudsman, regarding the role of the Ombudsman in investigating prisoner complaints; (3) various memoranda from Assistant Ombudsmen to Ombudsman Aguero regarding inmate complaints; (4) excerpts from the deposition of Scott Faunce, the Chief Administrator at Bayside, regarding notification from the Ombudsman's Office of Inmate Complaints, as well as the investigation and remediation of those complaints; (5) various memoranda from Ombudsman Aguero to Faunce regarding inmate complaints; (6) a letter of complaint from Inmate S. Rinick to Assistant Superintendent Ellis; (7) excerpts from the deposition of Assistant Ombudsman Jessie Rojas regarding the reporting of specific inmate's complaints; (8) an excerpt from an undated memorandum from Rojas regarding inmate complaints; (9) excerpts from the deposition of Ombudsman Aguero regarding the response from prison administration to her reports of inmate complaints; (10) a memorandum, dated August 15, 1997, from Assistant Ombudsman Rojas to Ralph Lonergan of Internal Affairs regarding the complaints of Inmate, Luis Mejia; (11) various Internal Affairs reports regarding complaints from inmates, Randy Stewart, Edward Goldsboro, Jeffrey Morton, Jose Ortiz, Kenitay Red Hawk, Wayne Zuraski, Carlos Martinez, Larry Jocks, Tavius Lindsey, and Gerald DeNoia; (12) a letter

of complaint dated August 28, 1997, from Inmate Dan McCallum to Fauver; (13) a letter of complaint, dated October 1, 1997, from Randy Stewart addressed "To Whom it May Concern;" (14) a memorandum, dated June 30, 1998, from Assistant Ombudsman Lebak to Investigator Tom Guerin regarding an injury suffered by an "Inmate Golden, # 283018;" (15) an excerpt from a report by Ombudsman Aguero detailing specific inmate's complaints from tours of Bayside in August, 1997; and (16) an excerpt from a report by Assistant Ombudsman Royal regarding inmate complaints on August 12, 14, 15, 17, 1997. *See* App. to Pls.' Br. in Opposition to Defs.' Mot. to Dismiss Pls.' Fifth Amended Compl.

I conclude that all of the above matters are integral to Plaintiffs' Complaint, because they all pertain to either the existence of an administrative grievance procedure at Bayside, or to a specific inmate's exhaustion of the grievance procedures that were available to them. Accordingly, I find that I may consider all of the above exhibits in Plaintiffs' Appendix without converting Defendants' Motion to Dismiss into a Motion for Summary Judgment.

Plaintiff, Junius Williams's submissions include: (1) a copy of Williams's ARF dated March 15, 2001; (2) a copy of Williams's ARF marked "received" on March 21, 2001; (3) portions of Williams's hospital records from Trenton State Prison Hospital; (4) Magistrate Judge Rosen's July 20, 2001 Order setting a discovery deadline of November 30, 2001; (5) Williams's discovery requests, *see* Aff. of Andrew J. Kyreakakis, Esq. in Opposition to Defs.' Mot. to Dismiss; and (6) an Internal Affairs Investigation Report regarding Williams's allegations of assault, dated September 5, 1997. *See* Supplemental Aff. of Andrew J.

Kyreakakis, Esq. in Opposition to Defs.' Mot. to Dismiss.

I conclude that I may consider Item (4) under the public record exception, and Items (1) through (3) because they are matters referenced by and integral to Williams's Fifth Amended Complaint. Item (5) does not fall within any exception and thus I will not consider it in deciding this Motion to Dismiss.

## III. DISCUSSION

Defendants advance three arguments in support of their Motion to Dismiss. They argue that Plaintiffs' Sixth Amended Complaint: "(1) fails to contain any allegations of facts for hundreds of so-called plaintiffs in violation of Judge Orlofsky's [November 29, 2000] Order; (2) fails to allege a civil rights conspiracy claim pursuant to 42 U.S.C. §§ 1983 and 1985(3); and (3) fails to show that plaintiffs exhausted their available administrative remedies prior to filing suit for prison conditions, pursuant to the PLRA." Defs.' Br. at 7. Each of these arguments apply only to a subgroup of Plaintiffs. I will address each argument in turn and analyze that argument's applicability to specific Plaintiffs listed in the Complaint.

### A. Pleading Deficiencies

### 1. Those Plaintiffs Whose Claims Fail To Meet a "Heightened" Pleading Standard [5]

■ Defendants argue that several of the Plaintiffs who make some factual allegations in the Sixth Amended Complaint, nevertheless must be dismissed for failing to allege sufficient facts to meet a "heightened" pleading standard. The question of what pleading standard applies to § 1983

---

5. This section's discussion applies to Plaintiff, Junius Williams, who makes specific allegations of the conduct which forms the basis of his claims. *See* Williams Fifth Amended Compl. at ¶¶ 5–19.

claims against individual government officials is unsettled within the Third Circuit.

In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the United States Supreme Court held that the federal courts may not apply a heightened pleading standard more stringent than the "liberal standard" of Rule 8(a) to civil rights claims alleging municipal liability under § 1983. *See* 507 U.S. at 168, 113 S.Ct. 1160. The Court did not decide, however, whether a heightened pleading standard applied to § 1983 cases involving claims against individual government officials. *Id.* at 166–67, 113 S.Ct. 1160. Prior to *Leatherman*, the Third Circuit required a heightened pleading standard for all § 1983 claims, *see e.g., Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988); *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981); *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 67 (3d Cir.1986), and has not revisited this specific issue in the wake of *Leatherman.*

In the course of this litigation's extensive history, I have discussed the split of authority among the District Courts in this Circuit concerning the proper pleading standard, but was not required at that time to decide the issue. *See White,* 19 F.Supp.2d at 311 n. 7 (comparing *Jordan v. New Jersey Dep't of Corrections,* 881 F.Supp. 947 (D.N.J.1995)(finding no heightened pleading requirement in § 1983 action against individual government officials) with *D'Aurizio v. Palisades Park,* 963 F.Supp. 387 (D.N.J.1997)("claims for violations of civil rights in this circuit are subject to heightened pleading standards of factual specificity in pleading.")); *see also Young v. Stauffer,* No. 93–5794, 1995 WL 225285, at *2 (E.D.Pa. Apr. 17, 1995) ("However, pursuant to [*Leatherman* ], civil rights complaints in this circuit are no longer subject to a heightened pleading

standard."); *Bieros v. Nicola,* 860 F.Supp. 223, 225 (E.D.Pa.1994)("a heightened pleading standard does not apply to civil rights actions against individual defendants."); *but see Verney v. Pennsylvania Turnpike Comm'n,* 881 F.Supp. 145, 150 n. 5 (W.D.Pa.1995)(declining to follow the Eastern District decisions that "have concluded that after *Leatherman* there is no heightened pleading standard in any civil rights action .... unless and until the Supreme Court addresses this issue or the Third Circuit revisits it in light of *Leatherman.*") (citations omitted); *Briley v. City of Trenton,* 164 F.R.D. 26, 29 (D.N.J.1995)("Because the Supreme Court declined to rule with respect to individual officers, the doctrine of *stare decisis* compels this Court to apply the Third Circuit's heightened pleading standard to § 1983 actions against government officials in their individual capacity.").

■ I acknowledge that District Courts are bound by *stare decisis* to apply the last statement of their Court of Appeals on an issue until either that Court or the Supreme Court addresses the issue. *See Verney,* 881 F.Supp. at 150 n. 5; *Briley,* 164 F.R.D. at 29. That general rule, however, does not mandate the application of a heightened pleading standard here for several reasons. First, both *Verney* and *Briley* were decided within two years of *Leatherman,* thus, there was good reason to believe the issue would be addressed by the Third Circuit in due course. Almost ten years have passed since *Leatherman,* and no such ruling has been forthcoming. In those ten years, the "weight of authority" among the District Courts in the Third Circuit has "leaned" strongly in favor of applying 8(a)'s liberal pleading rule to all § 1983 claims. *See Palma v. Atlantic County,* 53 F.Supp.2d 743, 756–57 (D.N.J. 1999) (collecting cases).

A more compelling reason, however, is the Supreme Court's recent reiteration of the reasoning which undergirds its pronouncements on pleading standards in general. Most recently, in a Title VII case, the Supreme Court observed:

Rule 8(a)'s simplified pleading standards applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts. In *Leatherman* we stated: "The Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. Expressio unius est exclusio alterius." Just as Rule 9(b) makes no mention of municipal liability under Rev. Stat. § 1979, 42 U.S.C. § 1983 (1994 ed., Supp. V), neither does it refer to employment discrimination. Thus, complaints in these cases, *as in most others*, must satisfy only the simple requirements of Rule 8(a).

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002) (unanimous decision) (internal citations omitted) (emphasis added).

The doctrine of *stare decisis* obligates me to follow not only the result reached by the Supreme Court but also the rule used to arrive at that result. *See Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F.Supp. 981, 984–85 (E.D.Pa.1994)(citing *Planned Parenthood v. Casey*, 947 F.2d 682, 691–92 (3d Cir. 1991), *aff'd in part* and *rev'd in part on other grounds*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Piazza v. Major League Baseball*, 831 F.Supp. 420,

437–38 (E.D.Pa.1993); *Flood v. Kuhn*, 407 U.S. 258, 282–84, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)). The Supreme Court's pronouncements in the pleading area espouse the principle that all civil actions are governed by Rule 8(a)'s liberal pleading requirement, unless specifically delineated in Rule 9(b). Therefore, after *Swierkiewicz, supra*, I conclude that Plaintiffs are not obligated to plead with specificity their claim against individual government officials under § 1983 in order to withstand a Motion to Dismiss.

## 2. Those Plaintiffs Who Make No Factual Allegations Specific To Their Claims

■ Defendants argue that approximately 380 plaintiffs [6] have made "no factual allegations in the Fifth [Sixth] Amended Complaint to support their claims," and thus, must be dismissed from this lawsuit. Defs.' Br. at 9. Defendants argue that dismissal of these Plaintiffs is proper for failure to meet even the liberal pleading requirements of Fed.R.Civ.P. 8(a).

Rule 8(a) requires that "A pleading which sets forth a claim for relief, … shall contain (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Federal Rule's system of simplified pleading was a departure from the writ system of old which accepted the premise that "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome" so as to focus litigation on the merits of a claim. *See Swierkiewicz*, 534

---

**6.** Because of additional information supplied in the Sixth Amended Complaint, this number has been reduced to approximately 315 Plaintiffs, according this Court's count.

U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1; *Conley*, 355 U.S. at 48, 78 S.Ct. 99.

Here, the Plaintiffs who have not alleged facts specific to their cause of action nevertheless are included in the paragraphs of the Complaint which state the general allegations common to all Plaintiffs. *See* Sixth Amended Compl. at ¶¶ 1–13, 357–91. These paragraphs give Defendants fair notice of the basis for Plaintiffs' claims. They identify the relevant time period, the alleged unconstitutional conduct, the injuries suffered, and the relief sought. While these paragraphs identify many Defendants as "John Doe's," I have previously held that Plaintiffs' inability to identify some of the Defendants with specificity can not be held against them on a Motion to Dismiss because "the perpetrators of the alleged assaults took steps to conceal their identities." *White*, 19 F.Supp.2d at 312.

I acknowledge the truth of Defendants' argument that the counsel for Plaintiffs have been given extraordinary leeway to conduct inmate interviews over a four-and-a-half year period in order to define the relevant Plaintiffs and the basis of their complaints. While they have, over this time period, managed to flesh out the majority of the individual Plaintiff's claims, the claims of over 300 Plaintiffs still have not been defined with specificity. The Federal Rules of Civil Procedure, however, provide that the proper juncture at which to weed out such claims is after discovery has been completed on a Motion for Summary Judgment, not on a Motion to Dismiss, pursuant to Rule 12(b)(6). *See* Fed. R.Civ.P. 56; *Swierkiewicz*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1("claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

### 3. Pleading of Conspiracy pursuant to § 1983

■ The liberal pleading requirement of Rule 8(a) applies equally to Plaintiffs' claims of a conspiracy under § 1983. *See* discussion *supra* III.A.1. Plaintiffs' Sixth Amended Complaint alleges that: (1) the Defendants "conspired among themselves and with others to commit the unconstitutional acts described herein and to maintain the atmosphere and. intimidation described herein," Pls.' Sixth Amended Compl. at ¶ 388; *see also* Junius Williams Fifth Amended Compl. at ¶ 58; (2) that the "object and purpose" of the conspiracy was to deprive plaintiffs [sic] inmates ... of the right to be free from cruel and unusual punishment, the right to adequate medical care, the right to access administrative channels and/or the courts for redress of grievances, and the right to due process and the right to free expression. Pls.' Sixth Amended Compl. at ¶ 389; *see also* Junius Williams Fifth Amended Compl. at ¶ 59. The body of the Complaint is rife with specific allegations of the deprivation of constitutional rights which form the basis of the conspiracy charge. *See e.g.* Pls.' Sixth Amended Compl. at ¶¶ 4, 13, 14–356, 357; *see also* Junius Williams Fifth Amended Compl. at ¶¶ 5–19. Accepting all reasonable inferences in Plaintiffs' favor, as I must on a Motion to Dismiss, I conclude that Plaintiffs have pled sufficient facts to support a claim of conspiracy under § 1983. Defendants are on notice of the relevant time period, the names of many of those Defendants who allegedly conspired, and, the object and purpose of the conspiracy. Furthermore, the Complaint alleges wide-ranging and widespread illegal conduct throughout Bayside which allegedly went unremedied despite inmate complaints and investigative reports from the Ombudsman and Internal Affairs. These facts are sufficient

to make a reasonable inference that a conspiracy existed among the Defendants.

### 4. Pleading of Conspiracy pursuant to § 1985(3)

■ 42 U.S.C. § 1985(3) prohibits conspiracies predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). To state a claim under § 1985(3), the plaintiff must allege: " '(1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any persons or class of persons ... [of] the equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.' " *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253–54 (3d Cir.1999)(quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997)). Thus, to survive a Motion to Dismiss their § 1985(3) claims, Plaintiffs must, in addition to the allegations made in support of their § 1983 conspiracy claims, allege that the conspiracy was motivated by "racial ... or otherwise class-based" animus.[7]

Upon a thorough review of the specific claims made by 391 of the Plaintiffs in paragraphs 14 through 356 of the Sixth Amended Complaint, I conclude that the following Plaintiffs have alleged a conspiracy motivated by racial animus: Tony Bacon (¶¶ 18–19);[8] Frederick Brown (¶¶ 41–50); Alfonso Torres (¶¶ 57–63); Carlos Martinez (¶¶ 70–74); Hamzah Olugbala Abdullah Jaleel (a.k.a. Todd Snell Randolph) (¶ 77); Charles Anderson (¶ 84); Eugene Brice (¶ 97); David Brown (¶ 98); Lawrence Casele (¶ 109); Jimmy DeJesus (¶ 128); William Faccone (¶ 146); Kevin Gaines (¶ 157); David Gill (a.k.a. Kyle Harding)(¶ 164); Raymond Harris (¶ 176); Pedro Hernandez (¶ 179); Michael Hinderson (¶ 181); Darren Holland (¶ 182); George H. Jenkins (¶ 192); Hampton Jenks (¶ 193); Gene A. Jones (¶ 197); William Jones (¶ 201); MacArthur Lee (¶ 212); Angel Leon (¶ 212a); Jimmie Lewis, Jr. (¶ 213); Angel Lopez (¶ 216); Gregory Lynch (¶ 217); Moises Maldonado (¶ 220); Dan McCallum (¶ 226); Donnie McClendon (¶ 228); Everett McLean (¶ 229); Luis G. Mejias (¶ 232); Henry Mitchell (¶ 236); John Negron (¶ 247); Joe L. Parks (¶ 255); Richard Pettigrew (¶ 257a); Calvin Pilgrim (¶ 259); Jon Pocknett (¶ 260); Mark Rawlins (¶ 268); Eddie Rhodes (¶ 272); Fenton Riddick (¶ 273); Cherrod Roberts (¶ 278); Eric Roberts (¶ 279); Abdul R. Shabazz (¶ 293); Bernard Short (¶ 296); Stack Stackhouse (¶ 305); Jonathan Sylvester (¶ 310); Ronald Temple (¶ 317); Alvin Thornton (¶ 320); and, Walter Weaver (¶ 340). I further find that Junius Williams has plead sufficient facts of a conspiracy motivated by racial animus to maintain his § 1985(3) in the face of Defendants' Motion to Dismiss. *See* Junius Williams Fifth Amended Compl. at ¶¶ 6, 8, 14.

To summarize my findings on Defendants' arguments concerning the deficiency of Plaintiffs' pleading, I conclude that Rule 8(a)'s pleading requirement applies to

---

**7.** I note that the parties are in agreement that neither inmates nor homosexuals are recognized classes entitled to protection under § 1985(3), *see Biase v. Kaplan*, 852 F.Supp. 268, 290 (D.N.J.1994)(citing *Rourke v. United States*, 744 F.Supp. 100, 105 (E.D.Pa.1988), *aff'd* 909 F.2d 1477 (3d Cir.1990)), and thus, in this case, Plaintiffs' counsel has argued only that those Plaintiffs who allege racial animus may maintain an action pursuant to § 1985(3). *See* Defs.' Br. at 20 n. 11; Pls.' Br. at 39–40.

**8.** The paranthetical notations denote the paragraphs in the Sixth Amended Complaint which contain the allegations of racial animus.

Plaintiffs' claims made pursuant to 42 U.S.C. § 1983. I find that all Plaintiffs, including those Plaintiffs who have not made specific allegations in the body of the Sixth Amended Complaint, have alleged sufficient facts to put Defendants on notice of the claims made against them, pursuant to § 1983. Finally, I conclude that only those Plaintiffs, specifically noted above, who have alleged facts to support a conspiracy motivated by racial animus may pursue claims based on § 1985(3). The § 1985(3) claims of all the other Plaintiffs shall be dismissed.

### B. Exhaustion of Available Administrative Remedies

In 1996, Congress amended the PLRA in an effort to stem the tide of frivolous lawsuits by prisoners, see 141 Cong. Rec. S14408–01, S14413 (daily ed. Sept. 27, 1995) (statement by Sen. Dole), as well as to curtail judicial intrusion in the management of correctional facilities. See Lynn S. Branham, *The Prison Litigation Reform Act's Enigmatic Exhaustion Requirement: What It Means and What Congress, Courts and Correctional Officials Can Learn From It*, 86 Cornell L.Rev. 483, 488–89 (2001). Among other things, the amendments required prisoners to exhaust the administrative remedies made available to them by prison grievance procedures before filing suit in federal court. See 42 U.S.C. § 1997e(a)(amended by Pub.L. 104–34, Title I, § 101(a), 110 Stat. 1321–71 (1996))("[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The judicial and scholarly debate which followed this amendment focused almost exclusively on whether prisoners were or should be required to exhaust administrative remedies when those remedies did not include

the relief they sought, usually, monetary relief for past unconstitutional conduct by prison officials. See e.g., Branham, *supra*; Meredith McCollum, *The Prison Litigation Reform Act: Should Prisoners Be Required to Exhaust Administrative Remedies When They Seek a Form of Relief Not Available Under Prison Procedures?*, 31 Cumberland L.Rev. 369 (2001); Kathryn F. Taylor, *The Prison Litigation Reform Act's Administrative Exhaustion Requirement: Closing the Money Damages Loophole*, 78 Wash. U.L.Q. 955 (Fall, 2000); Sharon I. Fiedler, *Past Wrongs, Present Futility, and the Future of Prisoner Relief: A Reasonable Interpretation of 'Available' in the Context of the PLRA*, 33 U.C. Davis L.Rev. 713 (2000); Perez v. Wis. Dep't of Corr., 182 F.3d 532 (7th Cir.1999)(requiting exchaustion); Wyatt v. Leonard, 193 F.3d 876 (6th Cir.1999)(requiring exhaustion); Whitley v. Hunt, 158 F.3d 882 (5th Cir.1998)(not requiring exhaustion); Lunsford v. Jumao–As, 155 F.3d 1178 (9th Cir.1998)(not requiring exhaustion); Alexander v. Hawk, 159 F.3d 1321 (11th Cir.1998)(requiring exhaustion); Garrett v. Hawk, 127 F.3d 1263 (10th Cir. 1997)(not requiring exhaustion).

In the four-and-a-half years that it has taken to arrive at the Sixth and final Amended Complaint in this case, the law interpreting the exhaustion requirement of the PLRA has evolved and ultimately been clarified by the United States Supreme Court. As discussed above, I held in my initial published opinion concerning this case, *White v. Fauver*, that claims of excessive force were not encompassed by the PLRA and that there existed a futility exception to its requirement of exhaustion of administrative remedies. See *White*, 19 F.Supp.2d at 314, 317.

Thereafter, the Third Circuit overruled those conclusions in *Nyhuis* and *Booth*. In *Nyhuis*, the Third Circuit concluded

that the PLRA requires an inmate to exhaust all administrative remedies prior to filing a federal suit, regardless of whether those administrative remedies can provide the inmate with the relief he seeks, that is, no "futility exception" exists under the PLRA. *See* 204 F.3d at 71. *Nyhuis* further held that the PLRA's exhaustion requirement applied equally to § 1983 and *Bivens* claims. *Id.* at 68–69. Although *Nyhuis* did not come before the Supreme Court, its holding was affirmed this term by the Court in the case of *Porter v. Nussle*, — U.S. — , 122 S.Ct. 983, — L.Ed.2d — (2002), on appeal from the Second Circuit. In *Nussle*, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes, and whether they allege excessive force or other conduct. *Id.* at, 122 S.Ct. 983.

In *Booth*, the Third Circuit reiterated that there was no "futility exception" under the PLRA for § 1983 claims, that the PLRA's coverage of "prison conditions" encompassed excessive force claims, and that therefore, inmates were required to exhaust their administrative remedies before bringing excessive force claims in federal court. *Booth*, 206 F.3d at 295, 298. The Third Circuit's holding in *Booth* that the PLRA contained no futility exception was subsequently affirmed by the United States Supreme Court. *See Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001).

Thus, it is now clear that Plaintiffs were required to exhaust the available administrative remedies before filing suit in this Court. Defendants urge this Court to dismiss Plaintiffs' Complaint because they failed to do so. They argue that many of the Plaintiffs failed to file ARFs at all, and that the remaining Plaintiffs who did file ARFs did so merely days before filing their Fifth Amended Complaint, and thus,

cannot be said to have "exhausted" their administrative remedy, as that term has been construed by the Third Circuit and the Supreme Court. *See* Defs.' Br. at 38–39; *see also Nyhuis*, 204 F.3d at 71 (finding the policy considerations underlying the PLRA's exhaustion requirement is to allow prisons to investigate and remedy prisoner complaints before intervention from federal courts, to save judicial resources, and to generally improve prison administrative processes); *Nussle*, — U.S. — , 122 S.Ct. 983, — L.Ed.2d — ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.").

Plaintiffs argue that their suit cannot be dismissed for failure to exhaust administrative remedies because the "remedies" which were available at Bayside, *i.e.*, the Administrative Remedy Form, is not an "*administrative* remedy" and was not available to the inmate population by virtue of the prison officials' threats and coercion. In the alternative, Plaintiffs argue that I should consider any inmate who filed an ARF at any time, or who complained to the Ombudsman, to have exhausted the administrative remedies available to them. *See* Pls.' Br. at 13–27.

Thus, I find myself presented with a question not squarely addressed by the Third Circuit or the Supreme Court, that is, can grievance procedures outlined in a prison handbook be considered "administrative remedies" under the PLRA? If they may, then I must discern whether the particular procedures outlined in the Bay-

side Prison Inmate Handbook were such administrative remedies. I answer the first question in the affirmative, but find that the particular procedures at issue in this case are not the type of administrative remedies contemplated by the Supreme Court or the Third Circuit in their analyses of the PLRA's exhaustion requirement.

*Nyhuis, Booth* and *Nussle* all concerned situations in which the prisons at which the plaintiffs were incarcerated had clearly enunciated and detailed grievance procedures enacted pursuant to a state or federal administrative procedure act, which the relevant Courts found sufficient to fall within the PLRA's exhaustion requirement. *See Booth,* 121 S.Ct. at 1823 n. 4 ("The parties do not dispute that the state grievance system at issue in this case has authority to take some responsive action with respect to the type of allegations Booth raises"); *Nyhuis,* 204 F.3d at 77 ("Of course, to serve these purposes, grievance procedures must be understandable to the prisoner, expeditious, and treated seriously. Although not necessary to the holding we reach, ... the procedures at issue in this case appear to meet these requirements.").

Nyhuis was a federal inmate, and therefore, was governed by the administrative grievance procedures set out in 28 C.F.R. §§ 542.10 to .19 (2002), which mandate the persons responsible for implementing Administrative Remedy Programs, 28 C.F.R. § 542.11, and, provide for, *inter alia,* informal resolution, 28 C.F.R. § 542.13, and, detailed filing procedures, appeals procedures and response times, 28 C.F.R. §§ 542.14, -.15, -.18. Booth was a state prisoner covered by the Commonwealth of Pennsylvania's Department of Corrections Consolidated Inmate Grievance System. *See Booth v. Churner,* 206 F.3d at 293 n. 2 (discussing the Consolidated Inmate Grievance Review System, Policy No. DC–ADM 804 §§ VI.A.I., VI.B.2. (Oct. 20, 1994)). This grievance procedure consists of a three-part administrative process, with strict time limits for submissions and responses, and provisions for two levels of appeal. *See id.* Nussle was a state prisoner governed by the grievance procedure enacted pursuant to the State of Connecticut Department of Correction Administrative Directive Number 9.6. *See* Resp't. Br. at JA–5, *Porter v. Nussle,* 2002 WL 261683, 2001 WL 1111222 (Sept. 12, 1994). That grievance procedure defines what matters are grievable, gives explicit directives for filing grievances, and provides for three levels of appeal. *See id.*

 The inmates here are incarcerated in a state prison in New Jersey. The NJ DOC has not promulgated a grievance procedure for state penal institutions, although its regulations do include: (1) a requirement that county jails adopt written inmate grievance procedures, *see* N.J.A.C. § 10A:31–14.4 (2002);[9] (2) ad-

---

9. Defendants argue that the "law of the case" doctrine *requires* me to adhere to my earlier conclusion in *White* that N.J.A.C. § 10A:31–14.4 is applicable to state prisons. *See White,* 19 F.Supp.2d at 317. The law of the case doctrine, however, "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912); *In re City of Philadelphia Litigation,* 158 F.3d 711, 718 (3d Cir.1998). Reconsideration of a prior ruling or finding is warranted where there has been "an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (1981); *City of Philadelphia, supra; NL Industries, Inc. v. Commercial Union Ins. Co.,* 65 F.3d 314, 324 n. 8 (3d Cir.1995).

It now appears that N.J.A.C. § 10A:31–14.4 applies only to county jails, not to state prisons. *See Concepcion,* 125 F.Supp.2d at 117. In order to prevent a manifest injustice, I will reconsider my previous conclusion that N.J.A.C. § 10A:31–14.4 is applicable to state

ministrative remedies regarding disciplinary sanctions, *see* N.J.A.C. § 10A:4–11.1; (3) administrative remedies regarding placement in protective custody, *see* N.J.A.C. § 10A:5–5.3; and, (4) administrative remedies regarding confinement in the Security Threat Group Management Unit, *see* N.J.A.C. § 10A:5–6.11. *See Concepcion v. Morton*, 125 F.Supp.2d 111, 117 & n. 5 (D.N.J.2000). The NJ DOC has also promulgated a regulation concerning the development and issuance of Inmate Handbooks. *See* N.J.A.C. § 10A:8–1.1 to –3.6 (amendment proposal pending, PRN 2002–86). The regulation does not require the handbook to contain information concerning inmate grievance procedures.[10] *See id.*

In a well-reasoned opinion which predated the Supreme Court's interpretations of the PLRA's exhaustion requirement in *Booth* and *Nussle*, Magistrate Judge Wolfson concluded that because the exclusive power to promulgate administrative rules and regulations for state prisons rests with the NJ DOC pursuant to N.J.S.A. § 30:1B–24, and the NJ DOC had failed to promulgate such a policy, a prison handbook promulgated by the administrators of a specific prison which had not gone through the notice and comment procedure outlined in New Jersey's Administrative Procedure Act, N.J.S.A. §§ 52:14B–1 *et seq.*, could not constitute an "administrative remedy" under the PLRA. *Concepcion*, 125 F.Supp.2d at 121. While neither the Supreme Court, nor the Third Circuit has addressed the issue of whether a rem-

edy, not adopted through a formal administrative procedure, can constitute an "administrative remedy" under the PLRA, the approach that both Courts have adopted in considering remedies implicated by the PLRA is in some tension with *Concepcion*'s strict interpretation of the term "administrative remedy."

For example, in *Booth*, the Supreme Court set an arguably low threshold for determining whether an administrative remedy is "available" under the PLRA. *See Booth*, 121 S.Ct. at 1823 n. 4 ("Without the possibility of *some* relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust. The parties do not dispute that the state grievance system at issue in this case has authority to take *some* responsive action with respect to the type of allegations Booth raises.")(emphasis added). Similarly, the Third Circuit did not insist that an administrative remedy be one adopted pursuant to administrative notice and comment procedures, but instead focused on minimum standards necessary to deem administrative procedures to be "available." *See Nyhuis*, 204 F.3d at 77–78 ("Of course, to serve these purposes, grievance procedures must be understandable to the prisoner, expeditious, and treated seriously.... Without embellishing—for the case law in the area will have to develop—we note our understanding that compliance with the administrative

---

prisons. Accordingly, I conclude that the NJ DOC has not promulgated a grievance procedure for state prisons.

**10.** The regulation requires inmate handbooks to include explanations or descriptions of: the reception process, the classification process; the rights and privileges of inmates concerning correspondence, visits, telephone call, inmate accounts, inmate legal services, inmate business activities, and the Ombudsman; work opportunities; correctional facility ser-

vices, specifically psychological, psychiatric, counseling, social work, educational, religious, substance abuse treatment, medical and dental care, and clothing services; recreation; personal hygiene; personal property; housekeeping; procedures for a name change; Community Release Programs; other programs and services including video teleconferencing; parole and expiration of sentences; and financial aid. N.J.A.C. § 10A:8–3.5.

remedy scheme will be satisfactory if it is substantial.").

▇▇▇ Thus, I cannot accept *Concepcion*'s conclusion that an inmate handbook can never constitute an administrative remedy for purposes of the PLRA's exhaustion requirement because it was not adopted pursuant to New Jersey's Administrative Procedure Act. Rather, such procedures contained in a prison handbook may constitute such an administrative remedy if they are "understandable to the prisoner, expeditious, and treated seriously" and enable prison authorities to take "some responsive action" to prisoner complaints.

Plaintiffs have submitted two pages from Bayside's Inmate Handbook, which I may consider on this Motion to Dismiss. *See* discussion *supra* II.B. These excerpts include instructions as to how "[i]nmates may bring complaints, problems, etc. to the attention of the institution's administration for resolution." *See* Bayside Inmate Handbook at 22, Pls.' App. at 1. Immediately after that introduction, inmates are instructed that "[t]his procedure is not intended to modify or restrict the inmate's right to seek judicial redress through the courts." *Id.* The handbook continues that "[a]ll inmates are *encouraged* to utilize the Administrative Remedy Form (A.R.F.) BSP–690 to express complaints regarding conditions within the jurisdiction of the institution." *Id.* (emphasis added). Inmates are instructed that the ARF is not "to be substituted for an established complaint, present litigation, appeal, interview request procedure, or Classification Committee decisions." *Id.* A response timetable is merely suggested, and it is left to the inmate to follow-up on his complaint—"Inmates are encouraged not to contact staff members for a response unless a response is not received within 13 working days of receipt of the A.R.F. by social services." *Id.* The "appeals process"

is referenced summarily in two short sentences: "(9) Issues not resolvable by the department head/Captain shall be forwarded to the Assistant Superintendent in charge of the area in question," and "(10)Complaints which are disposed of at the last step will not be accepted for further administrative consideration." *Id.*

The second page from the Bayside Inmate Handbook which Plaintiffs have submitted concerns the role of the Ombudsman. It describes the Ombudsman's Office as follows:

> The Ombudsman's Office provides a means outside of the institution by which inmate grievance, complaints, or suggestions can be reviewed. The Ombudsman's position is designed to complement conventional operations. They are members of the Deputy Commissioner's staff and are not directly responsible to the institutional administration. The Ombudsman can review policies, procedures, and regulations and, if indicated, make recommendations for change. *The Ombudsmen themselves cannot implement change.*

*See* Bayside Inmate Handbook at 79, Pls.' App. at 2 (emphasis added).

▇▇▇ Based on the record before me on this Motion to Dismiss, I conclude that the complaint procedures described in the Bayside Inmate Handbook cannot be considered an administrative remedy for purposes of the PLRA's exhaustion requirement. First, although the literal language of the handbook is "understandable to the prisoner," the handbook creates the clear impression that use of the ARF grievance procedure is optional not mandatory, and that it is not intended to modify or restrict access to the judicial process. No one reading that language would understand that it was necessary to exhaust the ARF process before filing a civil action with the courts. Second, the ARF process is not "expedi-

tious" in that it does not require administrators to respond to complaints filed on ARFs in any specific time period. Finally, based upon the record before me on this Motion, it does not appear that ARF complaints are taken seriously. *See* Faunce Dep. of Oct. 12, 1999, at 93–94, 111; Aguero Memo of Nov. 21, 1997 to Faunce at Pls.' Ex. 33.

The Handbook's description of the Ombudsman's role fares no better. Again, the Ombudsman is presented as an optional "means outside of the institution by which inmate grievances, complaints or suggestions can be reviewed." Furthermore, the Ombudsman's ability to "make recommendations for change" to administrative officials does not seem to be the type of "responsive action" envisioned by the Court in *Booth*. The Ombudsman's investigatory powers are limited. *See* Lebak Dep. at 26–28; Faunce Dep. of Oct. 12, 1999, at 80. Investigations by the Ombudsman's Officer were met with resistance from prison administrators, *see* Rojas Memo of Aug. 15, 1997, at 179; Aguero Dep. at 127–28 ("I was asking or suggesting to [Assistant Commissioner] Hilton that I was going to do an evaluation as to my observations, my findings, my recommendations ... I don't recall his exact words, but I recall he was not of the opinion that such a report be written."); or were overwhelmed by the magnitude of the complaints. *See* Internal Affairs Investigation Report at 32. Furthermore, it appears that many of the recommendations made by the Ombudsman were falling on deaf ears at Bayside. *See* Faunce Dep. of Oct. 12, 1999, at 93–94, 111; Aguero Memo of Nov. 21, 1997 to Faunce, at Pls.' Ex. 33.

Accordingly, I conclude that while a grievance procedure contained in a prison handbook may constitute an "administrative remedy" under the PLRA even if it was not promulgated pursuant to an administrative notice and comment procedure, the grievance procedure contained in the Bayside Prison Handbook was not sufficiently clear, expeditious, or respected to constitute such an administrative remedy. Neither was the Ombudsman sufficiently empowered to take responsive action to constitute an administrative remedy for purposes of the PLRA's exhaustion requirement. Because I find that there was no administrative remedy available to the Plaintiffs, I hold that they were not required to exhaust their administrative remedies before filing suit in this Court. Consequently, Defendants' Motion to Dismiss Plaintiffs' Sixth Amended Complaint and Junius Williams's Fifth Amended Complaint for failure to exhaust administrative remedies shall be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss shall be granted in part and denied in part. Specifically: (1) Defendants' Motion to Dismiss Plaintiffs' charge of conspiracy pursuant to 42 U.S.C. § 1985(3) in Count IV of the Sixth Amended Complaint and in Count III of Junius Williams's Fifth Amended Complaint shall be granted for all Plaintiffs except those enumerated in Part III.A.4 of this Opinion; (2) Defendants' Motion to Dismiss Plaintiffs' Sixth Amended Complaint and to Dismiss Junius Williams's Fifth Amended Complaint shall be denied in all other respects.