In the Matter of FASHION WEAR
REALTY CO., INC., Debtor.

The CITY OF NEW YORK,
Plaintiff-Appellee,

v.

FASHION WEAR REALTY CO., INC.,
Defendant-Appellant.

Nos. 81 Civ. 0158, 81 Civ. 0159.

United States District Court,
S. D. New York.

Aug. 31, 1981.

Allen G. Schwartz, Corporation Counsel, Judah Dick, Asst. Corp. Counsel, New York City, for plaintiff-appellee.

Sherman & Citron, New York City, for defendant-appellant; Kronish, Lieb, Shainswit, Weiner & Hellman, Richard Lieb, Jonathan S. Becker, Lauren Schaps, Richard H. M. Maidman, New York City, of counsel.

SOFAER, District Judge:

This appeal from several orders of Bankruptcy Judge Lewittes has been unduly complicated by the parties' excessive and unhelpful argumentation. When the extraneous issues are pushed aside, the appeal presents a comparatively simple question: did the Bankruptcy Judge err in abstaining from determining the taxes owed the City by Debtor and in allowing the City to foreclose on its tax liens against Debtor's property? Because the Bankruptcy Court failed, both factually and legally, to support some of its findings, and because the City has repeatedly interjected new, material evidence on appeal, the judgments below are affirmed in part and vacated in part, and the case is remanded.

I.  *Background*

Since the second quarter of the 1972–73 tax year, Debtor, Fashion Wear Realty Co., Inc., has failed to pay real-property taxes to the City of New York for property located at 113 West 42nd Street in New York ("the property"). Debtor has failed to pay the City sewer and water charges on the property since February 1974. In 1973, the New York Supreme Court reviewed the assessments on the property for the tax years 1961/62 through 1972/73, and it reduced the 1972/73 assessment from $560,000 to $420,-000.

Debtor filed for an arrangement under Chapter XI of the Bankruptcy Act on March 24, 1975. In February 1976, the City instituted a foreclosure action in New York Supreme Court against Debtor's property at 113 West 42nd Street for unpaid taxes; that action was stayed pursuant to Bankruptcy Rule 11–44. In 1977, the City commenced a second foreclosure action against the property, for taxes owed since 1972/73; that action, too, was automatically stayed because of the pendency of reorganization proceedings.

Subsequent to the Supreme Court's reduction of the 1972/73 assessment, Debtor filed an application with the City Tax Commission to reduce the assessments on the property for the tax years 1973/74 through 1976/77. The Tax Commission sustained the assessment of $590,000 for each of those years. The Commission *sua sponte* reduced the 1977/78 and 1978/79 assessments to $560,000, and it reduced the 1979/80 assessment to $465,000. Debtor filed tax-review petitions with the Supreme Court for the 1973/74 through 1976/77 tax years, but the Court has not yet acted on those petitions.

Pursuant to Bankruptcy Rule 11–44, the City commenced a proceeding in the Bankruptcy Court on January 11, 1979 to vacate the automatic stay that had blocked foreclosure of its tax liens against Debtor's property. According to the City's complaint in the Bankruptcy Court, the total taxes, water charges, and sewer rents owed as of January 11, 1979 amounted to $281,884.15, plus $118,324.90 in interest, for a total of $397,209.05. By the time of the trial below on June 3, 1980, the total arrears had increased to $593,974.18. Debtor counterclaimed for a determination of taxes and property assessment for the years 1972/73 through 1978/79. During the course of the trial, Bankruptcy Judge Lewittes received extensive testimony as to the value of, and Debtor's equity in, the property.

On July 11, 1980, Judge Lewittes issued a brief memorandum opinion outlining his findings and conclusions. Judge Lewittes considered four factors in deciding whether to lift the stay: (1) whether the debtor had any equity in the property; (2) whether the creditor's lien would be eroded by continuation of the stay; (3) whether the possibility of an arrangement between the debtor and his unsecured creditors was real; and (4) whether the property was essential to successful reorganization of the debtor. July 11 Memorandum Opinion at 2–3. Judge Lewittes ruled that (1) "The debtor's equity in the subject property is insubstantial"; (2) "it would be inequitable ... to prevent secured creditors [including the City] from exercising their matured rights while we abide the debtor's expectation of a rise in the real estate value of the property"; and (3) Debtor "has not seriously demonstrated, in any manner, that the subject premises are essential to a successful rehabilitation." *Id.* at 6–7. Concluding that "the 'balance of hurt' weighs decidedly upon the side of the City," the judge held that "the City is entitled to relief from the stay ... and may proceed, against the property, in the state court." *Id.* at 6. In an order based upon the findings stated in the opinion, Judge Lewittes dismissed Debtor's counterclaim and terminated the Chapter XI automatic stay, thereby permitting the City to proceed with its foreclosure action. July 28 Order. He subsequently denied Debtor's motion to amend his findings. September 24 Memorandum Endorsement.

On June 5, 1980, Debtor filed a new complaint in the Bankruptcy Court, essentially restating the counterclaim that had been dismissed and requesting that the Bankruptcy Court determine the amount of taxes due. Judge Lewittes dismissed the complaint. September 8 Order and Judgment. That dismissal was largely based on the court's earlier granting of the City's motion to lift the stay. A memorandum endorsement on the back of the order stated: "The debtor has consistently [and] adamantly refused to pay certain post petition taxes.... After this Court indicated from the bench that it would sign an order granting the relief requested by the City [lifting the stay], the debtor belatedly instituted the instant action to determine the amount of taxes due. In view of the aforementioned events [and] this Court's disposition of the City's action to lift the stay, it would be appropriate for this court to abstain from exercising jurisdiction in the instant action." The court also denied a motion by Debtor to redeem the property. September 8 Order.

In its appeal, Debtor raises innumerable allegations of error, many of which are meritless and others of which are irrelevant. Debtor's central contention is that the Bankruptcy Judge was obligated to determine the amount of taxes owing and erred in declining to do so. With respect to at least some of the years involved in the appeal, this contention is correct.

## II. Adjudication of Debtor's Tax Liability

Because this proceeding was filed before October 1, 1979, it is governed by the Bankruptcy Act, rather than the new Bankruptcy Code. *See* Pub.L.No.95–598, 92 Stat. 2549, § 403(a). Three provisions of the Act bear upon the propriety of the Bankruptcy Judge's abstention from determining Debtor's tax liability. Section 2(a)(2A) confers on the Bankruptcy Court jurisdiction to "[h]ear and determine ... any question

arising as to the amount or legality of any unpaid tax . . . , which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction. . . ." 11 U.S.C. § 11(2A). Section 62(a)(1) requires that "actual and necessary costs and expenses incurred . . . be reported in detail under oath, and examined or disapproved by the court." 11 U.S.C. § 102(a)(1). Taxes accruing after filing of the petition constitute expenses of the Chapter XI proceeding. *See, e. g., Nicholas v. United States,* 384 U.S. 678, 687–88, 86 S.Ct. 1674, 1681–82, 16 L.Ed.2d 853 (1966); *In re Dolard,* 519 F.2d 282, 285 (9th Cir. 1975). Section 64(a)(4) prohibits the Bankruptcy Court from requiring "payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court." 11 U.S.C. § 104(a)(4).

■ On their face, therefore, sections 2(a)(2A), 62(a)(1) and 64(a)(4) require the Bankruptcy Court to determine the amount of taxes properly owing on property in the bankrupt's estate. Strong policy considerations underlie that duty. The Bankruptcy Act seeks expeditious resolution of the debtor's financial problems in a single forum, for the benefit of both the debtor and its creditors. *See, e. g., Tatum v. Commissioner of Internal Revenue,* 612 F.2d 193, 194 (5th Cir. 1980); *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Sharpe v. Commissioner of Internal Revenue,* 69 T.C. 19, 26–28 (1977). Requiring a debtor to litigate tax liabilities in various fora would preclude prompt reorganization and could prejudice the interests of creditors involved in the proceeding. As Collier observes, the purpose of section 2(a)(2A) "was to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings might delay conclusion of the bankruptcy proceedings interminably." 3A Collier on Bankruptcy ¶ 64.407, at 2205. A central purpose of a Chapter XI proceeding, moreover, is to encourage debtor rehabilita-

tion. *Nicholas v. United States, supra,* 384 U.S. at 687, 86 S.Ct. at 1681. By refusing to resolve a major—and contested—liability against a debtor, the Bankruptcy Court might well doom any attempt to save the failing enterprise. *See In re E.C. Fisher Corp.,* 229 F. 316, 317 (D.Mass.1915) (forerunner of § 2(a)(2A) enacted to prevent "the depletion of the debtor's estate by payment of excessive or unjust taxes").

■ These abstract policy imperatives are illustrated forcefully by the facts of this case. The tax liability asserted by the City is substantial. Yet the assessments upon which that liability is predicated are hotly and credibly contested. The City represents that the assessments used by the City Tax Commission were $590,000 for 1973/74 through 1976/77, $565,000 for 1977/78 and 1978/79, and $465,000 for 1979/80 and 1980/81. Plaintiff's Brief at 4. When the City moved for summary judgment below, its appraiser testified that the proper assessment was $450,000. *Id.* at 8. At trial, he testified that $360,000 was the appropriate assessment. *Id.* at 9–10. Debtor argues that even this last revision is grossly excessive. Because of various deadlines under state law, it is unclear whether any forum other than the Bankruptcy Court exists in which Debtor can seek relief from the apparently excessive assessments. Thus, the Bankruptcy Court was obligated, absent some exception, to determine the taxes owing on the property.

One exception does apply to at least some of the assessments involved in this case. Section 2(a)(2A) denies the Bankruptcy Court jurisdiction with respect to a tax liability that "prior to bankruptcy has been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 11(2A). The rationale underlying this exception is that adversarial adjudication of a particular tax liability by a competent tribunal must be treated as sufficiently reliable to obviate the need for relitigation before the Bankruptcy Court. The tax-review obligation imposed upon the Bankruptcy Court by sec-

tion 2(a)(2A) is intended to ensure that a debtor can seek relief from improper tax charges; but it is not intended to award the debtor a second bite at the apple when a competent tribunal has already ruled. Thus, with respect to taxes not "contested before and adjudicated by" Debtor prior to filing of its petition, Debtor and its creditors are entitled to independent evaluation of the charges' validity by the Bankruptcy Court.

### III.  *The Proceedings Below*

The disputed tax assessments must be divided into three groups: (1) those adjudicated prior to filing of the Chapter XI petition (1972/73 taxes); (2) those incurred subsequent to filing (1975/76 through 1980/81 taxes); and (3) those incurred prior to filing, but as to which it is unclear whether a pre-filing adjudication occurred (1973/74 and 1974/75 taxes).

■ The tax assessment for 1972/73 was contested before and adjudicated by a competent judicial tribunal prior to the filing of Debtor's petition. Debtor sought review in the New York Supreme Court of the assessments on the property for 1961/62 through 1972/73, and that court reduced the 1972/73 assessment from $560,000 to $420,000. *See* Debtor's Brief, Ex. A. By the express terms of section 2(a)(2A), therefore, the Bankruptcy Court was precluded from reviewing the 1972/73 assessment. Accordingly, Judge Lewittes's order vacating the stay with respect to 1972/73 taxes and interest accrued thereon until the filing of the petition was correct. The City may foreclose on the property immediately to the extent of that debt.

Debtor correctly contends, however, that the City cannot collect post-petition interest on the 1972/73 taxes. The Supreme Court has ruled in an apposite context that "accumulation of interest [on pre-petition taxes] must be suspended as of the date the Chapter XI petition was filed." *Nicholas v. United States, supra,* 384 U.S. at 686, 86 S.Ct. at 1681 (footnote omitted). In *Nicholas,* the Court divided the tax years into three blocks of time: pre-petition, post-peti-

tion, and post-bankruptcy. The Court held that "[a] tax incurred within any one of these three periods would, we think, be entitled to bear interest against the bankrupt estate until, but not beyond, the close of the period in which it was incurred." *Id.* The rule enunciated in *Nicholas* extended to the Chapter XI context the principle that accumulations of interest on claims against a bankrupt, including taxes, are suspended when a bankruptcy petition is filed. *Id.* at 682, 86 S.Ct. at 1678 (citing cases). Two considerations supported the decision to prohibit the cumulative accrual of post-petition interest: the belief that "creditors should not be disadvantaged *vis-a-vis* one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws," and the desire to avoid "the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate. . . ." *Id.* at 683, 86 S.Ct. at 1679. (footnote omitted). The Bankruptcy Court did not in this case distinguish between pre- and post-petition taxes, nor did it separate pre-petition interest from post-petition. The Bankruptcy Court erred in permitting the City to foreclose on the interest that accrued on the 1972/73 taxes after March 24, 1975, the date on which Debtor filed its Chapter XI petition. Of course, the City may collect interest on taxes incurred subsequent to filing of the Chapter XI petition. *Id.* at 686, 86 S.Ct. at 1681.

■ The second group of taxes consists of those incurred subsequent to filing: *i. e.,* the taxes for years 1975/76 through 1980/81. The Bankruptcy Court vacated the stay on foreclosure with respect to these years, but refused to evaluate those tax assessments. Although the reasons for the Bankruptcy Court's action are not entirely clear, the central rationale appeared to be that abstention from evaluating the assessments was appropriate under the circumstances presented. This refusal to evaluate the post-filing taxes was erroneous.

The Supreme Court emphasized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), that abstention is an extraordinary measure that may be invoked only in narrowly defined circumstances. Of the three situations in which the Court there held that abstention might be appropriate, only one conceivably applies to this case: the situation in which a case presents state-law questions of such public importance as to overshadow the result in the particular dispute. *Id.* at 814, 96 S.Ct. at 1244. Debtor contended below that the state equalization rates should be used in determining the taxes owed; the propriety of using those rates is being litigated in the state courts. The use of equalization rates, however, is not a sufficiently important issue to justify abstention; the Bankruptcy Court's independent evaluation of the assessments would in no way interfere with the ongoing state litigation. Moreover, at oral argument of this appeal, Debtor disclaimed reliance upon the equalization rates.

The Bankruptcy Court justified its abstention on the grounds that Debtor has "consistently and adamantly refused to pay certain post petition taxes" and "belatedly instituted the instant action to determine the amount of taxes due," September 8 Order and Judgment; that Debtor's "equity in the subject property is insubstantial," July 11 Memorandum Opinion at 7; and that Debtor failed to demonstrate "that the subject premises are essential to a successful rehabilitation," *id.* at 6. In effect, Judge Lewittes was suspicious of Debtor's purpose in asserting last-minute claims and believed that determining the taxes would be a waste of time, serving only to delay payment to the City.

These are not recognized grounds for abstention. Preservation of judicial resources is undoubtedly a worthy objective; and this Court, too, is suspicious of Debtor's true motives. But the evidence in the record does not reliably establish, nor do the Bankruptcy Court's findings adequately support, its conclusions that Debtor lacks significant equity and that the property is unnecessary for successful rehabilitation. Debtor in fact offered to redeem the property, but its application was denied without supporting findings. Moreover, the record contains ample evidence to enable the Bankruptcy Court quickly to determine the appropriate assessments on the property. Finally, Debtor's contention that the property is necessary for, and would make possible, a successful reorganization has not been refuted. Under these circumstances, the more efficient and proper course is to allow Debtor to pay the taxes that are found owing by the Bankruptcy Court—failing which, the property could be sold. Debtor would thus be afforded the rights provided by section 2(a)(2A).

■ The third group of taxes consists of those incurred prior to filing of the petition, but as to which it is unclear whether a prefiling adjudication occurred: *i. e.*, the taxes for years 1973/74 and 1974/75. The City contends that the Bankruptcy Court correctly vacated the stay with respect to these years, because the matter had been contested and adjudicated before the City Tax Commission prior to bankruptcy, and thus the Bankruptcy Court was without jurisdiction to review those assessments under section 2(a)(2A).

Whether these taxes were "adjudicated by a judicial or administrative tribunal of competent jurisdiction" prior to bankruptcy, 11 U.S.C. § 11(a)(2A), depends, first, upon whether the City Tax Commission resolved Debtor's petitions for review of the two assessments prior to filing of the Chapter XI petition on March 24, 1975. The City relies upon section 165 of the New York City Charter, which provides that the Tax Commission's "final determination ... upon any application for the correction of an assessment shall be rendered not later than the twenty-fifth day of May. Otherwise, the assessment objected to shall be deemed to be the final determination of the tax commission." The City argues that the Commission therefore must have acted upon the petitions for 1973/74 and 1974/75 by May 25, 1974, months before filing of the

petition on March 24, 1975. This reasoning is unpersuasive. The City Charter provision does not ensure that the Tax Commission in fact acts by May 25; indeed, on appeal, Debtor submitted evidence of a Tax Commission decision rendered after the statutory deadline. Debtor's Letter of June 26, 1981, at 3. The City therefore cannot rely upon the presumption that the assessments for these two years were adjudicated prior to filing of the petition. Moreover, the provision does not force the Tax Commission to adjudicate a protest by May 25, but merely provides that the original assessment becomes final on that date. In order to oust the Bankruptcy Court of its jurisdiction under section 2(a)(2A), the City must locate the records that it asserts are missing and prove to the Bankruptcy Court that these two claims were in fact adjudicated prior to March 24, 1975.

If the City does prove that either or both of these assessments were adjudicated prior to filing, it must then establish that the Tax Commission constitutes a "judicial or administrative tribunal of competent jurisdiction." The City argued below, and initially on appeal, that the Tax Commission should be deemed a judicial tribunal; these arguments were rather persuasive. After oral argument of this appeal, however, the City suddenly reversed its position, now contending that the Tax Commission cannot be considered an administrative tribunal "because of Fashion Wear's refusal to submit income and expense statements for all or some of those years." City's Letter of June 15, 1981, at 2. In light of this peculiar development, a remand of the issue to the Bankruptcy Court is needed for its analysis of the status of the Tax Commission's decisions as to these two years. The Bankruptcy Court may vacate the stay with respect to either or both of these years only if it finds (1) that the Tax Commission acted as an administrative tribunal in the particular instance and (2) that the Commission adjudicated the tax liability prior to filing of the petition; otherwise, the Bankruptcy Court must independently determine the proper tax liability for such year or years.

In sum, the Bankruptcy Court's decision vacating the stay with respect to the 1972/73 taxes is affirmed, and the City may foreclose on the property forthwith up to the amount of taxes owed, plus interest accrued to March 24, 1975. The Bankruptcy Court's decision with respect to 1973/74 and 1974/75 taxes is vacated and remanded. As to each of these years, the Bankruptcy Court must determine whether the City Tax Commission acted as an administrative or judicial tribunal and adjudicated Debtor's liability prior to filing of the petition: if it did, then immediate foreclosure for that year's taxes is appropriate; if it did not, then the Bankruptcy Court shall determine the taxes properly owed. The decision with respect to taxes for 1975/76 through 1980/81 is reversed and remanded, and the Bankruptcy Court shall independently determine the proper assessments for those years. Finally, the Bankruptcy Court shall make findings as to Debtor's equity in the property, as to whether the taxes assessed exceed the value of Debtor's interest in the property, and as to whether the property is essential to Debtor's successful reorganization. Thereafter, the Bankruptcy Court may make such orders on the basis of its findings as it deems proper.

The automatic stay on foreclosure is vacated in part and continued in part. Both cases before this Court, 81 Civ. 158 and 81 Civ. 159 are reversed and remanded for proceedings consistent with this opinion.

SO ORDERED.