In re Josephine DANIELS, Debtor.

Josephine Daniels, Plaintiff,

v.

County of Chester, Tax Claims Bureau, Leslie K. Bair, Director and Astro Group, LLC, Defendants.

Bankruptcy No. 03–10845 SR.
Adversary No. 03–0071.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 16, 2003.

Lynelle A. Gleason, Newtown, PA, Steven A. Riley, Thomas L. Whiteman, West Chester, PA, for Defendants.

Robert F. Salvin, West Chester, PA, for Plaintiff.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### *Introduction*

The Debtor filed this adversary proceeding to void a tax sale of her home. She alleges that the Chester County Tax Claim Bureau, and the Bureau's director (Bair) violated her constitutional and civil rights by conducting a judicial sale of her home without notifying her. As the purchaser of the property, the Astro Group is alleged to be liable to her as the recipient of a fraudulent transfer.

The County and Bair (Moving Defendants) have filed a Motion to Dismiss the Complaint under F.R.C.P 12(b). Dismissal is sought as to both defendants on some theories and only as to particular defendants on others. As to both movants, it is argued the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim of a civil rights violation or for the avoidance of a fraudulent transfer. As to Bair, it is maintained that her status as tax director affords her qualified immunity. The parties submitted briefs and argued their points at a hearing on May 6, 2003. The Court next took the matter under advisement. For the reasons set forth below, the Motion will be granted in part and denied in part.

### *Analysis*

*Does the Tax Injunction Act Deprive the Court of Subject Matter Jurisdiction?*

The Moving Defendants first seek dismissal on the grounds that the Court lacks subject matter jurisdiction. *See* F.R.C.P. 12(b)(1). The Court's determination of subject matter jurisdiction is of paramount importance. It is duty bound—at any level of the proceedings—to address the issue when it is perceived. 2 *Moore's Federal Practice,* § 12.30[1] (Matthew Bender 3d ed.). *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 132 n. 1, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) ("[o]f course, every federal court, whether trial or appellate, is obliged to notice want of subject matter jurisdiction on its own motion")(Ginsberg, J., concurring). Thus, the district court must determine questions of subject matter jurisdiction first, before determining the merits of the case. *See* 2 *Moore's, supra, id.; see also Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Whether the complaint states a cause of action upon which relief can be granted is a question of law ... which must be stated after and before the court has assumed jurisdiction over the controversy.")

Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. 2 *Moore's supra,* § 12.30[5]; *see Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994) (burden of proving jurisdiction is on party asserting it); *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995) *cert denied* 516 U.S. 1071, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996) (burden of proof on plaintiff to show court had jurisdiction over claim under Flood Control Act of 1928); *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986) (plaintiff must prove jurisdiction exists once challenged by defendant). In deter-

mining whether this burden has been met, the court need not confine its evaluation to the face of the pleadings, but may review or accept any evidence such as affidavits or it may hold an evidentiary hearing. 2 *Moore's supra,* § 12.30[3].

The Moving Defendant's assert that the Tax Injunction Act [1] deprives the court of jurisdiction. The Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. *See* Motion, 3. The Plaintiff responds that Bankruptcy Code § 505 carves out an exception to the Tax Injunction Act. Plaintiff's Memorandum, 8.

*The Scope of the Tax Injunction Act*

■ The Tax Injunction Act, first passed in 1937, was intended to prevent taxpayers from using federal courts to challenge the validity of state taxes under either state or federal law. *Osceola v. Florida Dep't of Revenue,* 893 F.2d 1231, 1232–33 (11th Cir.1990)(and cases cited therein). Its purpose is to "confin[e] federal court intervention in state government." *Jefferson County, Alabama v. Acker,* 527 U.S. 423, 433, 119 S.Ct. 2069, 2076, 144 L.Ed.2d 408 (1999), *quoting Arkansas v. Farm Credit Servs. of Central Ark.,* 520 U.S. 821, 826–27, 117 S.Ct. 1776, 1780, 138 L.Ed.2d 34 (1997). The Act is a statutory limit on federal court jurisdiction where equitable jurisdiction might otherwise exist. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298–99, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943); *Osceola,* 893 F.2d at 1232.

*The Exception for Bankruptcy Code § 505*

Bankruptcy Code § 505 authorizes the Court to determine certain tax liabilities:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title . . . .

11 U.S.C. § 505(a).

■ To the extent that a bankruptcy court must determine a debtor's tax liability in an area where such a determination may otherwise be barred by the Tax Injunction Act, the overwhelming majority view is that Congress expressly conferred jurisdiction on bankruptcy courts to do so in § 505 of the Code. *In re Hechinger Investment Co. of Delaware, Inc.,* 254 B.R. 306, 315 (Bankr.D.Del.2000). The Third Circuit "ha[s] consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims." *City of Perth Amboy v. Custom Distribution Serv., Inc. (In re Custom Distribution Serv., Inc.),* 224 F.3d 235, 239–40 (3d Cir. 2000). The legislative history of Section 505 emphasizes that it permits the bankruptcy court to determine the tax liability of a debtor "that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case." *Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d

---

**1.** 28 U.S.C. § 1341.

921, 925 (3d Cir.1990) *citing* S.Rep. No. 989, 95th Cong., 2d Sess. 67, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5853; *see also In re Century Vault Company,* 416 F.2d 1035, 1041 (3d Cir.1969) (Bankruptcy Act § 2a(2A)—predecessor to Code § 550—allowed trustee to review tax claim after time had run against the debtor for such a challenge).

The authority under section 505(a) to determine the amount or legality of a tax is discretionary. *See Shapiro v. I.R.S.,* 188 B.R. 140, 143 (Bankr.E.D.Pa. 1995); *In re Mall at One Associates, L.P.,* 185 B.R. 1009, 1016. It "may or may not be exercised depending upon the equities of the particular situation." *Starnes v. United States,* 159 B.R. 748, 750 (Bankr. W.D.N.C.1993). In determining whether to undertake a section 505(a) review, a number of factors are considered relevant, including the following: (1) the complexity of the tax issue to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of debtors; and (6) the prejudice or potential prejudice to the debtor or the taxing authority. *Starnes v. United States, supra* at 750; *In re AWB Associates, G.P.,* 144 B.R. 270, 276 (Bankr. E.D.Pa.1992). *See also Shapiro v. I.R.S., supra* at 143 (*quoting In re Hunt,* 95 B.R. 442, 445 (Bankr.N.D.Tex.1989)).

This analysis also requires courts to consider whether policy reasons underlying section 505 would be served by such a review. Two policies underlie § 505's grant of federal authority to determine state tax matters. First, § 505 allows the prompt resolution of a debtor's tax liability, where that liability has not yet been determined prior to the bankruptcy proceeding, in the same forum addressing the debtor's overall financial condition. *See City of New York v. Fashion Wear Realty Co. (In re Fashion Wear Realty Co.),* 14 B.R. 287, 290 (S.D.N.Y.1981); *see also In re Stoecker,* 179 F.3d 546, 549 (7th Cir. 1999) ("If federal courts could not determine the debtor's liability for state taxes— if they had to abstain pending a determination of that liability in state court— bankruptcy proceedings would be even more protracted than they are."), *aff'd sub nom. Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). Secondly, § 505 protects "creditors from the dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest." *In re Northwest Beverage, Inc.,* 46 B.R. 631, 635 (Bankr.N.D.Ill.1985) *citing In re Century Vault Co., supra.*

*Were the Debtor's County Taxes Contested and Adjudicated Prepetition?*

Again, the bankruptcy court will lack jurisdiction if the tax claim was both contested and adjudicated before this case was filed. The entire history of this assessment is not found in the record; however, some inference can safely be made. But to determine what inferences matter, a review of the Pennsylvania Real Estate Tax Sale Law is needed.

For counties of the third class, such as Chester, the assessment and collection of real estate taxes is governed by the Pennsylvania Real Estate Tax Sale Law.[2] That law provides that when a property owner is delinquent in paying taxes, an Upset Tax Sale is conducted. 72 Pa.C.S.A. §§ 5860.601–609. Before the Upset Tax

---

2. 72 Pa.C.S.A. §§ 5680.101–5680.803.

Sale is conducted, notice must be published in a newspaper and "shall be addressed to the owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties." *Id.* at § 5860.602(d). Additional notification requirements are imposed on the taxing authority to use "reasonable efforts" to discover persons whose property interests are likely to be affected by a pending tax sale. *Id.* at 5860.607a. If the upset price is not bid at the Upset Tax Sale, only then may a Judicial Tax Sale be conducted. 72 Pa.C.S.A. §§ 5860.610–612. In fact, a Judicial Tax Sale is never performed first because an attempt at an Upset Tax Sale is a prerequisite to a Judicial Tax Sale. This latter sale is called a Judicial Tax Sale because the tax bureau must petition the trial court for permission to sell the property "free and clear" of all liens. 72 Pa. C.S.A. § 5860.610. *See Murphy v. Monroe County Tax Claim Bureau,* 784 A.2d 878, 881 (Pa.Cmwlth.2001).

Against that legal backdrop, the Court reviews the rather sparse record to determine if a prepetition tax dispute and adjudication occurred. Attached to Plaintiff's Memorandum is her Complaint which incorporates the County's Petition for Judicial Sale. The Petition alleges that an Upset Tax Sale failed to bring the threshold bid. Petition, ¶ 4. On March 27, 2002, the common pleas court entered a rule allowing interested parties an opportunity to oppose the judicial sale of the Plaintiff's home. Plaintiff's Memorandum, Complaint, Ex. A. Numerous attempts by the Sheriff to serve the Rule and Petition were unsuccessful and on June 6, 2002, the Bureau filed a motion to extend the rule's deadline and for authority to serve it by other means. Petition, Ex. B. That motion was granted extending the return date to June 26, 2002 and authorizing service of the Petition and Rule by publication. *Id.*

On August 15, the court of common pleas ordered the property to be sold on September 23. On that date, Astro Group was the successful bidder. Complaint, ¶¶ 24, 25.

All of the foregoing occurred prior to the petition date: January 17, 2003. However, nothing in the record demonstrates that the Plaintiff contested either the liability or amount of the tax at that time. *See Hechinger, supra, id.* ("There is no requirement in § 505 that a debtor must exhaust available state law remedies as a precondition for obtaining a bankruptcy court ruling on such liability."); *In re Mall at One Associates, L.P.,* 185 B.R. 1009, 1016 (Bankr.E.D.Pa.1995) (same). And policy considerations also become relevant given Plaintiff's contention that the property was sold for substantially less than market value. Plaintiff asserts that the sale failed to realize $45,000 in equity. It would certainly be in the creditors' best interest to determine if this is so. Given what is at stake, the Court's exercise of its discretion to determine the Plaintiff's tax liability would be appropriate. For those reasons, the argument that the Court lacks jurisdiction must fail.

*The County's Motion to Dismiss The Section 1983 Claims*

The Moving Defendants next request dismissal of Count I under Rule 12(b)(6). Count I alleges a violation of Section 1983 of the Civil Rights Act of 1871. That section provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C.A. § 1983.

■ In *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that the legal sufficiency required of a complaint alleging municipal liability under § 1983 is no different from that required of any other sort of complaint save for the exceptions set forth in Rule 9. *Id.* at 164–67, 113 S.Ct. at 1161–1163. That is to say, complaints under § 1983 are to be judged by the liberal, notice pleading standard of Rule 8. *See id.* at 168, 113 S.Ct. at 1163. In *Leatherman,* the Court stated that

> [t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.

*Id.* (*quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted)). Therefore, in ruling on a motion to dismiss for failure to state a claim, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The Court need not determine whether the plaintiff will ultimately prevail; rather, it must determine whether the plaintiff can prove any set of facts to support his claim that would entitle him to prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The defendant carries the burden of establishing that no claim

has been presented. *Curry v. Huyett,* 1994 WL 111357 *1 (E.D.Pa.).

### Has Plaintiff Alleged A § 1983 Claim?

■ In order to state a claim under § 1983, a plaintiff must allege two things: 1) the violation of a right secured by the Constitution and laws of the United States; and 2) the commission of the deprivation by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572(1980); *Buzzanco v. Lord Corp.,* 173 F.Supp.2d 376, 381 (E.D.Pa.2001); *Breslin v. Brainard,* 2002 WL 31513425 *3 (E.D.Pa.). As is shown below, the Plaintiff has plainly set forth the first requirement, but it is unclear whether she has adequately plead the second.

### Is a Constitutional Violation Alleged?

■ The Complaint alleges that the County's decision to serve the rule by publication when it had confirmed the Plaintiff's mailing address is constitutionally inadequate. Complaint, Count I. The County defends its action arguing the Pennsylvania rules of procedure provide for published service. Motion, 8. Does publication service pass constitutional muster when other, more direct methods, are available?

■ Beginning with *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court has consistently made clear that service by publication alone failed the "elementary and fundamental requirement of due process ... which is to ... apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652 (citations omitted). *Mullane* remains the touchstone on the

question of the adequacy of the method used to give notice. *See Dusenbery v. United States,* 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002); *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 797, 103 S.Ct. 2706, 2710, 77 L.Ed.2d 180 (1983); *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). That is not to say, however, that notice by publication can never be sufficient service. *See City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) ("[W]hen the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication."). But with respect to individuals whose names and addresses are known or easily ascertainable, notice by publication is simply insufficient. *See Schroeder v. City of New York,* 371 U.S. 208, 212–213, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 296, 489 A.2d 1334, 1338 (1985) (holding that where a taxing authority intends to conduct a sale of real property because of nonpayment of taxes, it must notify the record owner of property by personal service or certified mail, and where the mailed notice has not been delivered because of an inaccurate address, the authority must make a reasonable effort to ascertain the identity and whereabouts of the owner(s)) Given that the Plaintiff's address was confirmed by the Postmaster, there existed other better means to notify her that her house would be sold. *See Fusco v. Hill Financial Savings Ass'n,* 453 Pa.Super. 216, 683 A.2d 677, 680 (1996) ("Service of process by publication is an extraordinary measure and great pains should be taken to ensure that the defendant will receive actual notice of the action against him.") Accordingly, a constitutional violation is alleged.

*Has the Plaintiff Alleged that the County is a "Person?"*

Section 1983 speaks of a "person." 42 U.S.C. § 1983. The Complaint, however, alleges that the acts complained were committed by the County Tax Claim Bureau. Complaint, ¶¶ 11–25. For purposes of determining if the infraction complained of was committed by a "person" as defined under the statute, it has been held that a local government or municipality is a "person" for purposes of § 1983 liability. *See Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). Subunits of local government, however, are not separate "persons" for § 1983 liability; rather, they are vehicles through which various governmental policies are fulfilled. *See Johnson v. City of Erie,* 834 F.Supp. 873, 878–879 (W.D.Pa.1993); *Williams v. Dayton Police Department,* 680 F.Supp. 1075, 1080 (S.D.Ohio 1987) *citing Shelby v. City of Atlanta,* 578 F.Supp. 1368, 1370 (N.D.Ga. 1984) *and Elam v. Montgomery County,* 573 F.Supp. 797, 804 (S.D.Ohio 1983); *see also Korf v. Feldenkreis,* 1999 WL 124388 *11 n. 5 (E.D.Pa.) (holding that subunits of cities are not proper parties to a section 1983 action). Accordingly, allegations of misconduct by the Tax Claim Bureau will be imputed to the County who is a "person" for purposes of § 1983.

*Has the Plaintiff Alleged A Basis for Municipal Liability Under § 1983?*

The Complaint alleges that the County, via the Tax Claims Bureau, was, at all times relevant, a unit of local government conducting itself under color of state law. Complaint, ¶ 27. But the County maintains that more is required in the way of pleading. It asserts that the Complaint is legally insufficient because it fails to

allege that the improper service was authorized pursuant to County policy or custom. Motion, 5. The Plaintiff disputes the claim that there is no evidence of policy or practice demonstrated by her pleadings. The existence of policy is inferred, to her mind, from the facts as pleaded. Plaintiff's Memorandum, 16–17.

 Even under the "notice pleading" requirement of the Federal Rules of Civil Procedure, it is still necessary for plaintiffs to state the basis for municipal liability. *A.D.E. Food Services Corp. v. City of Philadelphia*, 1996 WL 590906 *5 (E.D.Pa.) The predicate for such liability is action pursuant to established policy or custom. *Monell*, 436 U.S. at 691–694, 98 S.Ct. at 2037–2038; *see Zamichieli v. Stott*, 1999 WL 447311 *3 (E.D.Pa.) ("[I]f the actions of an officer of the municipality, in carrying out its customs and or policies, causes the deprivation of a plaintiff's constitutional or federal right, they are deemed to have occurred 'under color of law' and the municipality may be liable for these actions under § 1983." *citing Monell, supra*). For purposes of legal sufficiency, the complaint must plead the existence of a policy or custom which caused the violation. *See Wood v. Cohen*, 1997 WL 59324 *4 (E.D.Pa.) (dismissing complaint which failed to allege a pattern or practice of wrongful conduct, a prerequisite to municipal liability under § 1983); *Gunser v. Forman*, 1994 WL 529979 *3 (E.D.Pa.) (holding that to defeat motion to dismiss, plaintiff need only allege that his constitutional deprivation resulted from an official policy or custom). In addition, the complaint alleging municipal liability under Section 1983 must set forth a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Allen v. McKee*, 1993 WL 131431 *5 (E.D.Pa.)

Judged by this standard, the Complaint is insufficient because it does not state that the Plaintiff's right to procedural due process was violated as part of County policy or practice. That omission is critical in light of the Supreme Court's specific pronouncement in *Monell* that municipalities could not be held vicariously liable for the actions of their officers or employees. *See Monell, supra*, 436 U.S. at 691, 98 S.Ct. at 2036 ("In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)). In its present form, the Complaint does just that: it premises liability on one instance of selling a taxpayer's home without first providing her with the constitutionally required notice. In carefully reading the Complaint, the Court cannot fairly infer an allegation that the alleged violation occurred as part of the regular practice of the County. Accordingly, this count will be dismissed as to the County without prejudice.

*The Effect of Dismissal Without Prejudice*

 The Court will dismiss the § 1983 claim against the County without prejudice because it has discretion to grant Plaintiff leave to amend a claim where the amendment would not be futile and it would not be inappropriate to do so. *United States v. Union Corp.*, 194 F.R.D. 223, 232 (E.D.Pa.2000). The Third Circuit has stated that the Court may so exercise its discretion even without any request being made by the pleading party. *See District Council 47, American Federation of State, County and Municipal Employees v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986) (*quoting Borelli v. City of Reading*, 532 F.2d 950, 951 n. 1) (1976) ("[W]e suggest that district judges expressly state, where appropriate, that the [pleader] has leave to amend."). Further, the preferred

practice is to grant leave to amend at the time of dismissal whenever it appears that the pleader could cure the defect by amendment. *See District Council 47*, 795 F.2d at 316 (holding that district court should have granted leave to amend to provide sufficient factual allegations in support of the claim); 6 Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 1483 ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). Given the nature of the deficiency of the claim against the County, the Court concludes that an amendment would not be futile, and will, therefore, allow the Plaintiff a reasonable amount of time to replead that claim.

*Does the Complaint State a Cause of Action Against Bair?*

 Ms. Bair argues similarly that as to her the Complaint fails to state a claim upon which relief may be granted. The deficiency which she points to is a lack of specificity as to what conduct on her part violated the Plaintiff's constitutional right to procedural due process. Heightened pleading requirements, Ms. Bair maintains, require the Plaintiff to plead "specific conduct violating her rights, the time and place of that conduct, and the identity of the responsible officials." Motion, 6 *quoting Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988). Plaintiff responds that no heightened pleading requirement exists. Relying again on *Leatherman*, she maintains that simple notice pleading will suffice. Memorandum, 18–19.

To reiterate, *Leatherman* held that the federal courts may not apply a heightened pleading standard more stringent than the "liberal standard" of Rule 8(a) to civil rights claims alleging municipal liability under § 1983. *See Leatherman*, 507 U.S. at 168, 113 S.Ct. at 1162. The Court did not decide, however, whether a heightened pleading standard applied to § 1983 cases involving claims against individual government officials. *Id.* at 166–67, 113 S.Ct. at 1162 ("We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials"). Prior to *Leatherman*, the Third Circuit required a heightened pleading standard for *all* § 1983 claims. *See e.g., Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988); *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981); *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 67 (3d Cir.1986), and has not revisited this specific issue in the wake of *Leatherman*. What effect, if any, would the *Leatherman* holding have on the question of pleading requirements of § 1983 claims against individual government officials? A survey of cases in this circuit addressing that exact question follows.

There is a split of authority among the District Courts in this circuit regarding the level of specificity required to be plead in a § 1983 case against an individual government official. *See White v. Fauver*, 19 F.Supp.2d 305, 311 n. 7 (D.N.J.1998) (noting split). *Compare Bieros v. Nicola*, 860 F.Supp. 223, 225 (E.D.Pa.1994)("a heightened pleading standard does not apply to civil rights actions against individual defendants."); *Wood v. Cohen*, 1997 WL 59324 *3 (E.D.Pa.) (applying liberal notice pleading standard to civil rights suit against individual governmental official); *Johnson v. Dranov*, 1996 WL 547401 *3 (E.D.Pa.) (finding that District Courts have repeatedly extended *Leatherman* to civil rights cases involving individuals); *In re Bayside Prison Litigation*, 190 F.Supp.2d 755, 764 (D.N.J.2002) (holding

that *stare decisis* did not require heightened pleading standard in § 1983 complaint against local official); *Alexander v. Hargrove*, 1994 WL 313059 *5 (E.D.Pa.)(same); *Comp v. Warren*, 1994 WL 30303 *3 (E.D.Pa.) (same); *McCallen v. Holland–Hull*, 1994 WL 34251 *1 (E.D.Pa.) (same); *Boone v. Falls Township*, 1993 WL 228909 *2 (E.D.Pa.) (same); *Timmons v. Cisneros*, 1993 WL 276863 *1 (E.D.Pa.) (same); *with Verney v. Pennsylvania Turnpike Comm'n*, 881 F.Supp. 145, 150 n. 5 (W.D.Pa.1995) (declining to follow the Eastern District decisions that "have concluded that after *Leatherman* there is no heightened pleading standard in any civil rights action .... unless and until the Supreme Court addresses this issue or the Third Circuit revisits it in light of *Leatherman.*") (citations omitted); *Briley v. City of Trenton*, 164 F.R.D. 26, 29 (D.N.J.1995)( "Because the Supreme Court declined to rule with respect to individual officers, the doctrine of *stare decisis* compels this Court to apply the Third Circuit's heightened pleading standard to § 1983 actions against government officials in their individual capacity."); and *Brown v. Stewart*, 910 F.Supp. 1064, 1068 (W.D.Pa.1996) (applying heightened pleading standard in § 1983 case against individual governmental officials because *Leatherman* left the question open).

The split among these District Courts boils down to what degree of adherence is required by the doctrine of *stare decisis*. Certainly, District Courts are bound to apply the last statement of their Court of Appeals on an issue until either that Court or the Supreme Court addresses the issue. *See Verney*, 881 F.Supp. at 150 n. 5; *Briley*, 164 F.R.D. at 29. But the most recent case to address this issue, however, indicates that *stare decisis* is not without limits. *See In re Bayside Prison Litigation*, *supra*. That court provided a cogent rationale behind its conclusion that *stare de-*

*cisis* did not limit *Leatherman* to cases involving only municipalities. Noting the general trend of the lower court rulings on the issue and the high court's pronouncements in analogous contexts, that court held that *Leatherman's* notice pleading standard would be expanded to complaints against government officials. Its analysis is worth quoting at length:

[*Stare decisis*], however, does not mandate the application of a heightened pleading standard here for several reasons. First, both *Verney* and *Briley* were decided within two years of *Leatherman*, thus, there was good reason to believe the issue would be addressed by the Third Circuit in due course. Almost ten years have passed since *Leatherman*, and no such ruling has been forthcoming. In those ten years, the "weight of authority" among the District Courts in the Third Circuit has "leaned" strongly in favor of applying 8(a)'s liberal pleading rule to all § 1983 claims. *See Palma v. Atlantic County*, 53 F.Supp.2d 743, 756–57 (D.N.J.1999) (collecting cases).

A more compelling reason, however, is the Supreme Court's recent reiteration of the reasoning which undergirds its pronouncements on pleading standards in general. Most recently, in a Title VII case, the Supreme Court observed:

Rule 8(a)'s simplified pleading standards applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts. In *Leatherman* we stated: "The Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging mu-

nicipal liability under § 1983. *Expressio unius est exclusio alterius.*" Just as Rule 9(b) makes no mention of municipal liability under Rev. Stat. § 1979, 42 U.S.C. § 1983 (1994 ed., Supp. V), neither does it refer to employment discrimination. Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a).

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002) (unanimous decision) (internal citations omitted) (emphasis added).

The doctrine of *stare decisis* obligates me to follow not only the result reached by the Supreme Court but also the rule used to arrive at that result. (citations omitted). The Supreme Court's pronouncements in the pleading area espouse the principle that all civil actions are governed by Rule 8(a)'s liberal pleading requirement, unless specifically delineated in Rule 9(b). Therefore, after *Swierkiewicz, supra,* I conclude that Plaintiffs are not obligated to plead with specificity their claim against individual government officials under § 1983 in order to withstand a Motion to Dismiss.

*Bayside, supra* at 763–764. The Court finds the reasoning of the District Court in *Bayside* to be highly persuasive and consistent with how the Third Circuit is likely to rule on this question if it ever comes before that court. Our latter conclusion is based on the closest pronouncement of the Third Circuit on the issue. In *Abbott v. Latshaw,* 164 F.3d 141, 148 (3d Cir.1998), a case involving the sufficiency of a section 1983 complaint against both private individuals and individual government officials, that court appeared to indicate the liberal *Leatherman* standard would apply to all § 1983 cases: "Rather, the complaint easily satisfied the standards of notice plead-

ing; no more is required of a plaintiff in § 1983 cases." *Citing Leatherman, supra*

██ The Court turns then to an analysis of the claims against Ms. Bair. At the outset, the Court notes that there is no express allegation of any conduct on her part. Aside from identifying her as the Director of the County Tax Claim Bureau, (*see* Complaint ¶ 4), there is no other mention of her in the entire Complaint. For purposes of Rule 12(b)(6), however, the Court may consider certain documents attached to the Complaint. *See Steinhardt Group, Inc. v. Citicorp,* 126 F.3d 144, 145 (3d Cir.1997) ("In considering a rule 12(b)(6) motion, a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") Attached to the Complaint is the Petition for Judicial Sale. *See* Complaint, Ex. A. In her capacity as Director of the County Tax Claim Bureau, Ms. Bair verified the facts to support that petition. This is the alleged extent of her involvement in the judicial sale of Plaintiff's home as alleged by Plaintiff.

But as *Leatherman's* lenient pleading standard applies, the inquiry is whether the allegations as to Ms. Bair "constitute a short plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests showing that the [Plaintiff] is entitled to relief?" *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). What is alleged informs Ms. Bair of the alleged unconstitutional conduct, when it was to have occurred, what injury was suffered, and what relief is demanded. While there is still no mention of what her role in all this was, the Federal Rules of Civil Procedure provide that the proper juncture at which to weed out such claims is after discovery has been completed on a Motion for Summary Judg-

ment, not on a Motion to Dismiss, pursuant to Rule 12(b)(6). *See* Fed.R.Civ.P. 56; *Swierkiewicz,* 534 U.S. 506, 514, 122 S.Ct. 992, 998–999, 152 L.Ed.2d 1("claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.") Accordingly, the Motion to Dismiss as to Ms. Bair will be denied.

*May the § 1983 Claim Against Bair Be Dismissed on Qualified Immunity Grounds?*

▇▇▇▇ In the alternative, Bair asserts that she is entitled to qualified immunity from plaintiff's claim. Government officials, performing discretionary functions, are entitled to qualified immunity for their actions, if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an affirmative defense that the officer must raise. *See Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *see also* 5A Wright & Miller, *Federal Practice and Procedure Civil 2d* § 1357 (citing cases). Thus, qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir. 2001) *quoting Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996)

Because the Supreme Court characterizes the issue of qualified immunity as a question of law, *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994), the Court has repeatedly encouraged the resolution of immunity questions early in the proceedings. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (*per curiam*). Notwithstanding, the Third Circuit has observed that there is sometimes significant doubt as to the pure legal character of such questions. The Third Circuit has noted that the Supreme Court's imperative to decide qualified immunity issues early is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right. *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir.2002). The Third Circuit has indicated that resolution of this question may be a fact-intensive inquiry that requires a careful examination of the record. *Grant v. City of Pittsburgh,* 98 F.3d 116, 122 (3d Cir.1996). Such an examination should include a detailed factual description of the actions of each individual defendant. *Id.*

The lack of a sufficient record upon which to decide the qualified immunity issue is of particular concern in a motion to dismiss context. In *Kulwicki v. Dawson,* 969 F.2d 1454 (3d Cir.1992), the Third Circuit noted that the standard of review for a 12(b)(6) motion favors denying qualified immunity. *Id.* at 1462. "On review of a motion to dismiss for failure to state a claim, we look only to the complaint to see whether there is any set of facts plaintiff can prove that would support denial of immunity." *Kulwicki,* 969 F.2d at 1462.

Whether or not Ms. Bair is entitled to qualified immunity from plaintiff's Section 1983 action for damages will depend on whether she is able to show that her conduct did not violate clearly established

statutory or constitutional rights of which a reasonable person would have known. This requires a two part analysis. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the defendant violated a constitutional right? *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1294, 143 L.Ed.2d 399 (1999) (holding that in determining whether qualified immunity applies in a specific case, the court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all); *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."); *Torres v. United States,* 200 F.3d 179, 184 (3d Cir.1999) ("A court ... need not consider whether the right implicated was clearly established ... if the plaintiff has not alleged a deprivation of a constitutional right."); *Giuffre v. Bissell,* 31 F.3d 1241, 1247 (3d Cir.1994).

■■■ Second, if the initial prong is satisfied, the court must determine whether that right was clearly established at the time of the alleged violation. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Curley v. Klem,* 298 F.3d 271, 280 (3d Cir.2002); *Grant v. City of Pittsburgh,* 98 F.3d 116, 121 (3d Cir.1996) (*citing Anderson v. Creighton,* 483 U.S. 635, 636–637, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A right may be clearly established even if there is no "previous precedent directly in [*sic*] point." *Good v. Dauphin County Soc. Servs. for Children & Youth,* 891 F.2d 1087, 1092 (3d Cir.1989); *see also Assaf v. Fields,* 178 F.3d 170, 177 (3d.Cir.1999). "The ultimate issue is whether ... reasonable officials in

the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Good,* 891 F.2d at 1092; *see also Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039 ("[I]n the light of pre-existing law the unlawfulness must be apparent; otherwise qualified immunity is available."); *Shea v. Smith,* 966 F.2d 127, 130 (3d Cir.1992)("'Clearly established rights' are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

A review of the Complaint shows that neither prong of qualified immunity has been met. Although a constitutional violation has been alleged, *infra,* what is not alleged is that Ms. Bair is responsible for that violation. Thus, the same paucity of allegations to which Ms. Bair points as grounds for dismissal now prevents her from demonstrating clear-cut immunity. But even if the Complaint did frame her as the culpable actor, she could not credibly argue that the constitutional right alleged to have been violated was not clearly established. The Supreme Court statements regarding service by publication beginning with *Mullane* are quite consistent: publication notice of process is constitutionally insufficient where other means exist to notify a potential party that a property interest may be in jeopardy. The complaint simply does not allege facts that would support a ruling that Ms. Bair is entitled to qualified immunity.

*Does the Complaint State A Claim for the Avoidance and Recovery of a Fraudulent Transfer?*

■■■ Finally, the moving Defendants seek dismissal of Count II for the reason that this claim "cannot be sustained." Motion 11.[3] That Count alleges that the judi-

---

3. Although the Moving Defendants mean that

Count II similarly fails to state a claim upon

cial sale of the Plaintiff's home constitutes a fraudulent transfer pursuant to § 548 of the Bankruptcy Code. That section provides, in pertinent part:

(a)(1)The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation

. . .

11 U.S.C. § 548(a)(1). A transfer fraudulent under this Code provision may take two forms: the transferor may have conveyed property with intent to defraud creditors (§ 548(a)(1)(A)) or the circumstances surrounding the transfer render it fraudulent regardless of the transferor's state of mind (§ 548(a)(1)(B)). As with all such claims, "the circumstances constituting fraud ... shall be stated with particularity." F.R.C.P. 9(b); *see also In re Grossman,* 46 B.R. 319, 320 (Bankr. E.D.Pa.1985) (holding that a complaint averring only that "debtor has committed acts of fraud," fails to express the support-ing circumstances with particularity, and thus runs afoul of Rule 9(b))

While the Plaintiff does not expressly state which type of fraudulent transfer is alleged to have occurred, the Court can infer from her pleadings that her claim is of the second type, a constructively fraudulent transfer. The Plaintiff alleges that the property was sold for substantially less than it was worth, thereby allowing her to conclude that the buyer of her house paid less than reasonably equivalent value. Complaint, ¶¶ 35–37. The effect of the sale at that price, she continues, is to have rendered her insolvent. Complaint, ¶ 38. These are the elements of a prima facie constructive fraud claim.

And to this, the Plaintiff adds over fifteen paragraphs of allegations recounting the history leading up to the sale of the her home. Complaint, ¶¶ 11–26. Even assuming, for present purposes, that the County maintains that the fraud allegations are vague, that would simply be inaccurate given the level of specificity in the Complaint. Accordingly, the argument that Plaintiff has failed to state a claim for a fraudulent transfer must be rejected.

### Summary

The Moving Defendants' challenge to this Court's subject matter jurisdiction over the claims in this adversary proceeding will be denied. The County's motion to dismiss the § 1983 claims against it will be granted, but the Plaintiff will be granted an opportunity to amend that claim to address its legal insufficiency. Ms. Bair's motion to dismiss the § 1983 claim will be denied and the Court makes no ruling on the question of whether Ms. Bair is free from suit under the doctrine of qualified

---

which relief may be granted, the argument in support of dismissal is based on proofs. Motion 9,10. This, of course, is not the standard for judging dismissal under Rule 12(b)(6). Accordingly, much of what the Moving Defen-dants offer in this regard may be ignored as the Court's analysis will be limited to the pleadings and whether a fraudulent transfer claim has been adequately plead.

immunity. Finally, the motion to dismiss the Plaintiff's fraudulent transfer claim will be denied.